RANDOLPH DIVISION, ETHAN
ALLEN, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 74–1304.

United States Court of Appeals,
First Circuit.

Argued March 3, 1975.

Decided April 17, 1975.

Alan J. Levenson, Portland, Me., with whom Clarke C. Hambley, Jr., and Levenson & Levenson, Portland, Me., were on brief, for petitioner.

Frank Charles Morris, Jr., Atty., Washington, D. C., with whom Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Robert A. Giannasi, Asst. Gen. Counsel, Washington, D. C., were on brief for respondent.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Petitioner has sought review of the NLRB order finding that it violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, and the Board has filed a cross-application for enforcement. The Board adopted the decision of the administrative law judge, who had concluded that petitioner had discharged employee Naomi A. Falcone solely because it believed or suspected that she had begun or was about to embark upon the initial stages of unionizing petitioner's plant.

■ The Act proscribes employer actions which "interfere with, restrain, or coerce employees in the exercise" of their section 7 rights of self-organization or which discriminate "in regard to hire or tenure of employment . . . to encourage or discourage membership in any labor organization." It is well established that the statute is violated when the subjective motivation underlying a discharge is that of opposition to an employee's union activity, Radio. Officers' Union v. NLRB, 347 U.S. 17, 42–44, 74 S.Ct. 323, 98 L.Ed. 455 (1954); NLRB v. Barberton Plastics Products, Inc., 354 F.2d 66 (6th Cir. 1965); NLRB v. Whitin Machine Works, 204 F.2d 883 (1st Cir. 1953), and our role here is limited to inquiring whether there was substantial evidence to support the Board's determination that Falcone's discharge was due to petitioner's antiunion sentiment.

Falcone started work on a Tuesday and was discharged at the noon break on Friday of that week. On the morning of her discharge, she called upon Assistant Superintendent Dahlberg and requested a financial statement which would show how much money the company was making and how it was being spent. Dahlberg did not supply a statement, but suggested that Falcone buy a share of the company's stock or contact the personnel director. Falcone had another conversation with Dahlberg shortly before her lunch break. He asked why she wanted the financial information, and she responded that she was concerned about the fact that there was no union at the plant. The substance of these conversations was testified to by both Falcone and Dahlberg, and it is undisputed that during the four days of her employment Falcone performed her job capably and in a satisfactory manner.

■ The Board's determination that the discharge was attributable to an improper motive is supported by substantial evidence. Certainly the only alternative explanation offered by the employer is less than compelling in its persuasiveness, since the suggestion that Falcone was a "nut" or "screwball" was by the employer's admission based upon no information other than the requests for financial disclosure. Dahlberg testified variously as to his reasons for firing Falcone. He first said that she did not seem to be interested enough in her job. Then in answer to a question of the administrative law judge as to the reason, he said that he felt she was not likely to stick to her job as a permanent employee. He referred to her prior record of holding several jobs for only a short period (something known when she was hired) and the fact that they were having lengthy conversations "over something like that". Dahlberg said that his conversation with Falcone had been "good", not "sarcastic", but that it was "about something I didn't know", and [sic] "[a]fter I had given her a reasonable explanation", she still wanted to obtain information from secretaries. Finally, when asked by company counsel

what he would have told Falcone if he had had to reveal his reason, he said, "I wouldn't have said she was a nut maybe; but I might have been thinking it." Perhaps this testimony would have supported the conclusion that Falcone was fired for reasons unrelated to her professed prounion sentiments, but that is not the question before us. We decide only that the Board did not go beyond the evidence or draw impermissible inferences in resolving the factual disputes as it did.

On appeal the company emphasizes that it had a practice of hiring indiscriminately because of a shortage of skilled labor, and then discharging soon afterward those employees who did not work out. It is argued that in this context Falcone's discharge so soon after hiring was not unusual and does not suggest that the company acted for improper reasons. But we do not view the high turnover as either strongly or unequivocally supporting the company's version of the facts. The hiring practice can as easily be taken as undermining the company's position, since the firing of an admittedly competent employee under such circumstances requires greater explanation than if the company had experienced no difficulty in filling all jobs satisfactorily.

▇▇▇ Petitioner argues that, even if it be conceded that Falcone was discharged because of her prounion sentiments, there was no unfair labor practice because she had engaged in no protected concerted activity. This argument must be rejected insofar as it is to be taken as suggesting that Falcone's conversations with Dahlberg did not constitute "activity". "It is not questioned that a conversation may constitute a concerted activity although it involves only a speaker and a listener, but to qualify as such, it must appear at the very least that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees." Mushroom Transportation Co. v. NLRB, 330 F.2d 683, 685 (3d Cir. 1964). Here, the discharged employee

told the assistant superintendent that she wanted financial information about the company because she was worried that there was no union. We are aware of no authority supporting the proposition that the Act does not protect employees' expression of prounion sentiments, and we would in any case refuse to adopt a reading so at variance with the statutory language. The section 7 rights protected by 8(a)(1) include the right to "form" as well as "join" a labor organization and 8(a)(3) proscribes discriminatory action to "discourage membership in any labor organization". If an employer were free to fire any employee who showed a specific interest in the unionization of its employees, it could effectively forestall the exercise of section 7 rights by excluding from the work force all who showed any interest in exercising them. If it could so extinguish seeds, it would have no need to uproot sprouts. The policy of the National Labor Relations Act is "to insulate employees' jobs from their organizational rights", *Radio Officers' Union, supra,* 347 U.S. at 40, 74 S.Ct. at 335, and the prohibitions contained in sections 8(a)(1) and (3) are too broadly stated for us to conclude that an employer may, even in the absence of an organizing drive, discharge employees who express prounion attitudes. *See* Signal Oil & Gas Co. v. NLRB, 390 F.2d 338, 343 (9th Cir. 1968); NLRB v. Clausen, 188 F.2d 439, 443 (3d Cir. 1951); NLRB v. J. G. Boswell Co., 136 F.2d 585, 595 (9th Cir. 1943).

▇▇▇ Nor can the employer prevail when it argues that Falcone's inquiries were merely personal ones not related to or in preparation for group action. Petitioner contends that while Falcone's statements might be considered concerted activity if made to co-workers, they cannot be where made solely to management. This misses the distinction drawn in the cases between a complaint aimed at resolving only a personal problem and one also having the welfare of other workers in mind. The requirement of concertedness relates to the end, not the means. *See* NLRB v. Interboro Contractors, Inc., 388 F.2d 495, 500 (2d Cir.

1967). Petitioner's citation of NLRB v. C and I Air Conditioning, Inc., 486 F.2d 977 (9th Cir. 1973), is inapposite, since the complaint involved there related only to the discharged worker himself. Falcone's interest in unionization, by contrast, cannot be regarded as a merely personal concern, since that object could be achieved only through the involvement of her co-workers.

Enforcement granted.