532 F.2d 916
 91 L.R.R.M. (BNA) 2968, 78 Lab.Cas. P 11,353
 JEANNETTE CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 75-1555.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 8, 1975.
Decided March 22, 1976.
 
 Jeffrey L. Klein, Kahn, Kleinman, Yanowitz & Arnson, Cleveland, Ohio, for petitioner.
 John D. Burgoyne, Jane P. Schlaifer, Attys., N.L.R.B., Washington, D.C., for respondent.
 Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 Petitioner, Jeannette Corporation (the Company) discharged an employee, Cheryl McNeely, for discussing wages with other employees in violation of a company rule prohibiting employees from discussing wage rates among themselves, and for allegedly misrepresenting that she had received a salary increase. The National Labor Relations Board (the Board) found that McNeely's actions constituted concerted activities within the protection of Section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1970), and that the Company's rule inhibits organizational activities among its employees. Accordingly, the Board held that both the discharge and the rule violate Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1) (1970). The Company has petitioned to review these findings and set aside the Board's order that McNeely be reinstated and that the Company cease and desist from enforcement of its rule. The Board has cross-petitioned for enforcement.[1] We hold that the rule was invalid and the discharge violated the Act.
 
 
 2
 The Company, a manufacturer of glass, ceramic, and plastic products, employs at various locations in its plant clerical workers who are salaried and not represented by any labor organization. Its rule prohibiting discussion of wages has been in effect for a number of years, but was never reduced to writing. Despite the rule, it appears that salaries prevailing at the plant were frequently a topic of discussion among the employees.
 
 
 3
 McNeely was hired on July 15, 1974, at a salary of $435 per month to serve primarily as secretary to Vice-President Mallory. At that time, she was informed that the $435 "was only a starting salary" which would be increased as soon as she demonstrated her ability to handle the job. Within less than two months after she began work, McNeely became unhappy with what she regarded as her low wages. Between the latter part of August and her termination on September 6, she had several conversations with Debra Groves and Paula Caranese, also secretaries, concerning the low clerical salaries paid by the Company. Almost every day during that period, McNeely spoke with Groves, usually in the ladies' room before work and sometimes at Groves' desk. Both of them used these occasions to express their dissatisfaction with the prevailing clerical salaries, and in particular, their own salaries. McNeely encouraged Groves to seek a raise. By August 30, both employees had decided to speak to their respective bosses and "do something about" getting raises.
 
 
 4
 On September 6, McNeely spoke to Vice-President Mallory and requested a raise. Mallory replied that he would consider the matter. McNeely thereafter informed Groves of her action and Groves responded that she had also requested a raise. McNeely also told Caranese about the request. Caranese, however, became upset by this news and voiced some discontent to her boss, pointing out that she had been with the company for a longer time than McNeely but was making a smaller salary. Her superior reported this conversation to Mallory, who, after discussion with the personnel director, decided to terminate McNeely. She was told that she had broken the Company's policy prohibiting wage discussions among employees. An additional reason given McNeely for her discharge was that she had misrepresented to Caranese that she (McNeely) had in fact received a $100 salary increase, and misrepresented to Mallory that the personnel director had promised her such an increase. In all other respects, the Company found that McNeely's work was "very satisfactory" and that she presented no problems.
 
 
 5
 The Board first attacks the Company's unwritten rule, claiming that it is an unqualified prohibition of wage discussions among employees. Such discussions, the Board argues, can be an integral part of organizational activity, and a rule banning the exchange by employees of wage information can significantly inhibit the employees' exercise of their Section 7 rights to engage in concerted activities for mutual aid and protection.
 
 
 6
 Rules governing the conduct of employees on company time and property are often necessary and an employer has a right to maintain them. This right, however, is not "unlimited in the sense that (it) can be exercised without regard to any duty which the existence of rights in others may place upon (the) employer . . .. Opportunity to organize and proper discipline are both essential elements in a balanced society." Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 798, 65 S.Ct. 982, 985, 89 L.Ed. 1372, 1376 (1945).
 
 
 7
 It is obvious that higher wages are a frequent objective of organizational activity, and discussions about wages are necessary to further that goal. "The right of self-organization depends in some measure on the ability of employees to learn the advantages of self-organization from others." N.L.R.B. v. Babcock & Wilcox Co., 351 U.S. 105, 113, 76 S.Ct. 679, 685, 100 L.Ed. 975, 983 (1956). That is not to say that every wage discussion is protected activity.[2] It is sufficient for finding the rule prima facie violative of section 8(a)(1) to note that wage discussions can be protected activity and that an employer's unqualified rule barring such discussions has the tendency to inhibit such activity. Cf. N.L.R.B. v. Burnup & Sims, Inc., 379 U.S. 21, 23, 85 S.Ct. 171, 172, 13 L.Ed.2d 1, 3 (1964); N.L.R.B. v. Hudson Transit Lines, Inc., 429 F.2d 1223, 1227 (3d Cir. 1970).
 
 
 8
 Once it is established that the employer's conduct adversely affects employees' protected rights, the burden falls on the employer to demonstrate "legitimate and substantial business justifications" for his conduct. N.L.R.B. v. Fleetwood Trailer Co., Inc., 389 U.S. 375, 378, 88 S.Ct. 543, 545, 19 L.Ed.2d 614, 617 (1967); N.L.R.B. v. Jemco, Inc., 465 F.2d 1148, 1152 n.7 (6th Cir. 1972). In weighing the justifications offered by the employer, we must heed the Supreme Court's admonition that "(i)t is the primary responsibility of the Board and not of the courts 'to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy.' " N.L.R.B. v. Fleetwood Trailer Co., supra, 389 U.S. at 378, 88 S.Ct. at 546, 19 L.Ed.2d at 617, quoting N.L.R.B. v. Great Dane Trailers, 388 U.S. 26, 33-34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027, 1034-1035 (1967).
 
 
 9
 The only evidence in the record tending to justify the rule is the testimony of Vice-President Mallory. Mallory opined that "spending one's time standing around discussing salary is . . . a waste of time, (and) secondly, it is a disruptive thing . . .. " The Company's brief argues that the rule limits "jealousies and strife among employees."
 
 
 10
 The first part of Mallory's testimony suggests that the rule is intended to insure that employees work during working hours. An employer might adopt and enforce a rule prohibiting employee wage discussions during working time, in the absence of evidence that it was adopted for discriminatory purposes. Cf. Republic Aviation Corp. v. N.L.R.B., supra, 324 U.S. at 803 n.10, 65 S.Ct. at 987-988, 89 L.Ed. at 1379. A rule barring wage discussions among employees without any limitation as to time or place would presumably forbid employee discussions on breaks, in waiting time, before and after hours of work, during luncheons, and in restrooms. Such an unqualified rule would deny freedom of discussion among employees at times and places when such activity could not adversely affect job performance.
 
 
 11
 The Company has not argued to this court, nor did it argue to the Board, that the rule is valid because it is limited to discussions during working time.[3] The record offers nothing on the scope of the rule. In its complaint, the Board charged:
 
 
 12
 At all times material herein, (the Company) has maintained a rule prohibiting employees from discussing wage rates with other employees.
 
 
 13
 The Company's answer admitted that allegation. There was no testimony that McNeely was fired only because her conversations with employees about wages occurred during company time or on company premises. McNeely, moreover, testified that she never heard of the rule and there was no testimony that new employees were warned of the rule.
 
 
 14
 Thus, the rule was an amorphous, unwritten policy apparently framed only in the minds of the company officials. Employees were not generally aware of its existence and of its parameters, and, indeed, frequently discussed wages. They felt the reality of its presence only when the rule was invoked to justify a discharge. Only the Company could explain the rule and this it failed to do. In these circumstances we cannot say that the Board erred in not finding the rule justified as a disciplinary measure.[4]
 
 
 15
 The second justification offered by Mallory, characterized by the Company's brief as the limitation of "jealousies and strife among employees," is equally unacceptable. As previously stated, dissatisfaction due to low wages is the grist on which concerted activity feeds. Discord generated by what employees view as unjustified wage differentials also provides the sinew for persistent concerted action. The possibility that ordinary speech and discussion over wages on an employee's own time may cause "jealousies and strife among employees" is not a justifiable business reason to inhibit the opportunity for an employee to exercise section 7 rights.
 
 
 16
 Accordingly, we sustain the Board's finding that the Company's rule broadly prohibiting discussion of wages among employees is an unfair labor practice under section 8(a)(1). Since the rule is invalid on its face it cannot be enforced, and McNeely's discharge for violating the rule[5] cannot be sustained. We thus have no occasion to discuss the Company's contention that, entirely apart from the rule, McNeely's wage discussions with fellow employees did not constitute concerted activity within the protection of section 7 of the Act.
 
 
 17
 The Board's order will be enforced.
 
 
 
 [1]
 Our jurisdiction is conferred by Sections 10(e) and (f) of the National Labor Relations Act, 29 U.S.C. § 160(e) and (f) (1970)
 
 
 [2]
 Indeed, in our disposition of this case, see infra, we expressly refrain from deciding whether the wage discussions McNeely had were, in themselves, concerted activity
 
 
 [3]
 The Company at one time offered that explanation to the Administrative Law Judge in a brief; he rejected it as "unsupported by any record evidence."
 
 
 [4]
 See N.L.R.B. v. Great Dane Trailers, Inc., 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027, 1035 (1967): Once the Board makes out a prima facie case of discrimination in violation of section 8(a)(3), "the burden is upon the employer to establish that he was motivated by legitimate objectives since proof of motivation is most accessible to him." (Emphasis supplied.) Cf. Campbell v. United States, 365 U.S. 85, 96, 81 S.Ct. 421, 427, 5 L.Ed.2d 428, 437 (1961): "(T)he ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."
 
 
 [5]
 The Company has contended that McNeely was also discharged for certain misrepresentations. See p. 918 supra. The Administrative Law Judge found, based on testimony before him and evaluations of witness credibility, that no willful misrepresentations were made and that the principal basis of her discharge was wage discussions in violation of the rule. Our examination of the record reveals substantial evidence to support this conclusion. In any event, a discharge even partly motivated by an unlawful reason cannot stand. Cf. N.L.R.B. v. Princeton Inn Co. d/b/a Princeton Inn, 424 F.2d 264, 265 (3d Cir. 1970); N.L.R.B. v. Rubber Rolls, Inc., 388 F.2d 71, 74 (3d Cir. 1967)