NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SENCORE, INC., Respondent.

No. 76–1878.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1977.

Decided June 23, 1977.

Allison W. Brown, Jr., Atty., N. L. R. B., Elliott Moore, Deputy Associate Gen. Counsel, and Frank Phillips, Atty., N. L. R. B., Washington, D. C., for petitioner; John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, N. L. R. B., Washington, D. C., on brief.

Gale E. Fisher, May, Johnson & Burke, Sioux Falls, S. D., for respondent; John E. Burke and Gale E. Fisher, Sioux Falls, S. D., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, STEPHENSON and WEBSTER, Circuit Judges.

PER CURIAM.

The National Labor Relations Board (Board) petitions for enforcement of its order issued March 19, 1976, against Sencore, Inc. (Sencore).[1] The Board found that Sencore had interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in section 7 of the National Labor Relations Act (Act), 29 U.S.C. § 157, in violation of section 8(a)(1) of the Act. The Board additionally found that Sencore violated section 8(a)(1) of the Act by discharging employee Phyllis Swier and section 8(a)(3) and (1) of the Act by discharging employee Arlene Highstrom. Our review of the record as a whole convinces us there is substantial evidence to support the Board's findings and no error of law appears.

We note at the outset that Sencore does not challenge the Board's finding that the company had interfered with, restrained and coerced its employees in the exercise of their statutory rights, in violation of section 8(a)(1) of the Act. Sencore does contend, however, that the Board's finding that Phyllis Swier was discharged for engaging in protected concerted activity is not supported by substantial evidence. In addition, Sencore contends that the Board's findings that Arlene Highstrom was discharged for her union activity rather than for violations of the company's rules is not supported by substantial evidence.

The record reveals that Phyllis Swier was active in early 1974 in an attempt by the union to organize Sencore's employees.[2] The union failed to win a Board-conducted election held on March 5, 1974. A second organizational effort began in January 1975.

In early 1975 Sencore granted its employees a wage increase. By January 10, 1975, Swier had made some computations of her own in determining what she felt the amount of the raise should be. During a lunch break on January 10, Swier showed her computations to approximately eight of her fellow employees. Toward the end of the day, one of Sencore's supervisors observed Swier talking to other employees about the wage increase and her computations. As a result of these conversations, Swier was discharged by Sencore. It was suggested upon her discharge that Swier look for a place of employment where she would be satisfied.

Sencore contends that Swier's activity was not "concerted" and therefore not within the protection of section 7 of the Act.[3] We disagree. Higher wages are a frequent objective of organizational activity and discussions about wages are necessary to further that goal. *Jeannette Corp. v. NLRB,* 532 F.2d 916, 918 (3d Cir. 1976). Swier had discussed with at least nine fellow employees on January 10 her computations as to the wage increase. It is apparent her complaint was not solely aimed at resolving a personal problem. The welfare of other workers was also in mind. The requirement of concertedness relates to the end, not the means. *Randolph Division, Ethan Allen, Inc. v. NLRB,* 513 F.2d 706, 708 (1st Cir. 1975). Certainly Sencore's immediate discharge of Swier because of her dissatisfaction with the wage increase and the effect that her comments might have on new employees is supportive of the fact that Swier's complaint included the welfare of other workers. We conclude that Swier's activity in enlisting the support of her fellow employees as to her views of the wage increase was for their mutual welfare and is as much concerted activity as is ordinary group activity. *See Owens-Corning Fiberglas Corp. v. NLRB,* 407 F.2d 1357, 1365 (4th Cir. 1969).

1. The Board's decision and order are reported at 223 N.L.R.B. No. 16.

2. The union referred to is the International Brotherhood of Electrical Workers, Local No. 426, AFL–CIO.

3. 29 U.S.C. § 157 provides in pertinent part:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *.

■ The record further reveals Arlene Highstrom had been employed by Sencore for more than five years at the time of her discharge. Highstrom had been one of the most active proponents of unionization during the 1974 organizing attempt. During the first four years of her employment, Highstrom was never disciplined for any infraction of company rules. Following the 1974 Board-conducted election, Highstrom received two warnings for leaving her work station without permission. In the fall of 1974, Highstrom received a third warning based on poor workmanship. Her last warning came on January 20, 1975, when she left her work station without permission. This last warning also resulted in her dismissal.

Sencore contends that Highstrom was discharged pursuant to a company rule which allowed it to discharge an employee after three warnings. The Board found, however, that Highstrom was discharged because of her union activity. The record shows that the number of warnings given to Sencore employees for work rule violations increased significantly after the union organizational attempt in 1974. In addition, Highstrom was identified in December 1974 by several supervisors as a union ringleader. In a conversation between two supervisors during this time period, hope was expressed that Highstrom would request leave for needed surgery. The leave would then be denied and Highstrom would be forced to quit without the necessity of firing her. Also during this period the president of Sencore discussed the union activity with several of the supervisors and stated that the company should rid itself of any troublemakers.

Furthermore, the incident that triggered Highstrom's discharge was her leaving her work station without permission for three or four minutes to pay a fellow worker for an earlier purchase of eggs. In this regard Swier testified it was common practice for employees to sell personal articles to other employees during working hours. In fact, one supervisor had sold jewelry to supervisors and production line employees on company time.

■ In light of the above, we conclude the Board was warranted in drawing the inference that Highstrom's discharge was motivated by anti-union considerations. When, as here, the record presents facts that propose conflicting inferences, it is not for us to disagree with the findings of the Board. *Crenlo, Division of GF Business Equipment, Inc. v. NLRB,* 529 F.2d 201, 205 (8th Cir. 1975).

Accordingly, the Board's order will be enforced.