BLAW–KNOX FOUNDRY & MILL MACHINERY INC., Wheeling Works Division, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 80–1097.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1980.

Decided April 7, 1981.

---

Lawrence A. Reich, Chicago, Ill. (P. Kevin Connelly, Lederer, Reich, Sheldon & Connelly, Chicago, Ill., on brief), for petitioner.

Ralph C. Simpson, Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., Vivian A. Miller, Washington, D. C., on brief), for respondent.

Before WINTER, SPROUSE, and ERVIN, Circuit Judges.

SPROUSE, Circuit Judge:

This case is before us on the petition of Blaw-Knox Foundry & Mill Machinery, Inc. (the Company) to set aside an order of the National Labor Relations Board and the Board's cross-application for enforcement. The Board found that the Company violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by discharging Larry Jordan for engaging in protected concerted activity. Finding that Jordan had not engaged in protected concerted activity, we deny enforcement.

I.

The Company operates a foundry and mill facility in Wheeling, West Virginia. Larry Jordan's discharge from employment at that facility arose from his reaction to a foreman's alleged sexual harassment of Jordan's first cousin, Sharon Asher. Jordan filed an unfair labor practice charge with the Board, alleging that he had been discharged for concerted activity protected by section 7 of the National Labor Relations Act, 29 U.S.C. § 157. After a hearing before an administrative law judge, the Board sustained the charge and ordered Jordan's reinstatement.

The following facts were developed at the hearing. Asher had worked for the Company for some time and was a member of the union with which the Company had a collective bargaining agreement. Jordan was a new, probationary employee and was not a member of the union. On August 17, 1977, foreman Leonard Lewis encountered Asher and had a brief conversation with her. Although Lewis denies it, Asher claims that Lewis indecently touched her. Asher went to the foremen's office and in Lewis's presence informed her supervisor that she wanted to register a complaint about Lewis. She reported that Lewis had "grabbed' her and that although she "wasn't putting in a grievance," she did not want it to happen again.

After leaving the office, she told several co-workers of the incident with Lewis. When Asher described Lewis's alleged misconduct to Jordan, the latter suggested that he and Asher confront Lewis. The two of them proceeded to the foremen's office, where several supervisors were present. Jordan asked Asher to identify the man who had touched her and Asher pointed to Lewis.

Precisely what happened thereafter is sharply disputed. Lewis and two other foremen who were present testified that Jordan threatened to kill Lewis if Lewis ever touched Asher again. Asher and Jordan both denied this. As Jordan recounted the incident to the administrative law judge:

> I said ... you are a foreman, you shouldn't even consider doing anything like that, and he said, it was his word against hers, and if she wanted to go into the office, that they could .... I said that was between you and her ... and then he said, what are you going to do about it anyway?
>
> ....

I said, if you do it again, we'll take some sort of action or steps necessary to get something done about it.

According to Jordan, Lewis again asked him "in a different way" what he planned to do about it. Jordan testified:

I said just don't touch her again, or we'll find out, and that's when Larry Gribben touched me on the shoulder and we left.

Asher's testimony corroborated Jordan's:

[M]y cousin said to [Lewis], he said, you don't put your hands on her no more.... [Lewis] asked my cousin, what was he going to do about it anyway, and my cousin said, just don't put your hands on her no more... or you'll see, or something like that....

The administrative law judge credited the testimony of Asher and Jordan, discounting the alleged threat upon Lewis's life.

In a subsequent conversation with Lewis and another foreman, Jordan indicated that he would have no further involvement with the matter. So far as he was concerned, any further action was up to Asher and Lewis. Jordan filed no grievance in the matter and did not participate in Asher's grievance.

## II.

Counsel for the Board maintains that in coming to his cousin's assistance and protesting the alleged sexual harassment, Jordan was engaging in "classic concerted activity." The Company contends that Jordan's own testimony demonstrates he was not engaged in "concerted" activity within the meaning of the statute. Alternatively, the Company urges that the Board's finding that Jordan did not threaten Lewis's life is unsupported by substantial evidence. Since we agree with the Company's first contention, we need not reach the other.

## III.

Section 7 of the Act, 29 U.S.C. § 157, provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

In *NLRB v. Interboro Contractors, Inc.*, 388 F.2d 495, 500 (2d Cir. 1967), the Court of Appeals for the Second Circuit stated that the efforts of an individual employee acting alone to enforce the provisions of a collective bargaining agreement may be deemed "concerted," and thus protected, at least when the individual's interpretation of the agreement has a reasonable basis. *See NLRB v. John Langenbacher Co.*, 398 F.2d 459, 463 (2d Cir. 1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 685, 21 L.Ed.2d 691 (1969). *Cf. Ontario Knife Co. v. NLRB*, 637 F.2d 840 (2d Cir. 1980). The rationale for this rule, as expressed by the Board, is that "implementation of such agreement by an employee is but an extension of the concerted activity giving rise to that agreement." *Bunney Bros. Construction Company*, 139 N.L.R.B. 1516, 1519 (1962). Reaching substantially the same result are *NLRB v. Ben Pekin Corp.*, 452 F.2d 205, 206 (7th Cir. 1971); *Randolph Division, Ethan Allen, Inc. v. NLRB*, 513 F.2d 706, 708 (1st Cir. 1975); and *NLRB v. Selwyn Shoe Mfg. Corp.*, 428 F.2d 217, 221 (8th Cir. 1970). Other courts have held that to be protected, a single individual's activity must have been undertaken with the purpose of inducing or preparing for group action, *NLRB v. Northern Metal Co.*, 440 F.2d 881, 884–85 (3rd Cir. 1971); *Mushroom Transport Co. v. NLRB*, 330 F.2d 383, 385 (3d Cir. 1964), or on behalf of a group of employees in a representative capacity. *ARO, Inc. v. NLRB*, 596 F.2d 713, 718 (6th Cir. 1979); *NLRB v. Guernsey-Muskingum Electric Co-op, Inc.*, 285 F.2d 8, 12–13 (6th Cir. 1960). *See Pelton Casteel, Inc. v. NLRB*, 627 F.2d 23, 28 & n. 10 (7th Cir. 1980).

This court reviewed these interpretations of section 7 in *Krispy Kreme Doughnut*

*Corp. v. NLRB,* 635 F.2d 304 (4th Cir. 1980). There we declined to enforce a Board order finding protected concerted activity in an individual employee's refusal to forego a workmen's compensation claim. We recognized in *Krispy Kreme* that individual action may constitute protected concerted activity when it is " 'intended to enlist the support and assistance of other employees' . . . ." at 308 (quoting *Owens-Corning Fiberglas Corp. v. NLRB,* 407 F.2d 1357, 1365 (4th Cir. 1969)). But there was no evidence that the employee involved in *Krispy Kreme* had contemplated group activity. And because of the absence of a collective bargaining agreement, the *Interboro* rule— deeming protected an individual employee's efforts to enforce a collective bargaining agreement—was inapplicable.

Here, as was the case in *Krispy Kreme,* the record fails to reveal protected concerted activity under any standard. Jordan was neither attempting to enforce a collective bargaining agreement, seeking to induce group action, nor acting on behalf of a group. His altercation with foreman Lewis manifested a purely personal concern. Such personal missions are not deemed concerted activity under any test. *Joanna Cotton Mills Co. v. NLRB,* 176 F.2d 749, 753 (4th Cir. 1949). *See NLRB v. Buddies Supermarkets, Inc.,* 481 F.2d 714, 717 (5th Cir. 1973); *NLRB v. Ben Pekin Corp.,* 452 F.2d 205, 206–07 (7th Cir. 1971).

Unlike the situation in *Interboro,* nothing in the evidence here suggests Jordan was seeking to implement the terms of the agreement between the Company and the union when he confronted Lewis. He made no reference to the collective bargaining agreement during the confrontation. Instead of seeking out a union representative or even his own supervisor, Jordan went directly to Lewis. The vague threat to "take some sort of action or steps necessary to get something done about it" does not evince reliance on any substantive rights guaranteed in the agreement. *See NLRB v. C & I Air Conditioning, Inc.,* 486 F.2d 977

(9th Cir. 1973); *NLRB v. Ben Pekin Corp.,* 452 F.2d 205 (7th Cir. 1971).

However chivalric Jordan's actions, his purpose was personal and private; it was not to induce group activity. After thrusting himself upon the scene, Jordan disassociated himself from the incident and its principals. He told Lewis that any further action was "up to you and Sharon [Asher]" and that "if you never touch her, I won't have to come over to your area again." He took no part in Asher's grievance. In so quickly eschewing any representative role, Jordan revealed not concern for the welfare of workers generally, but rather the personal object of his brief intervention. We do not believe Jordan's actions can be deemed "concerted" for the purpose of section 7.

Considering the record as a whole, we conclude that the decision and order of the Board in this case are not supported by substantial evidence. *Universal Camera v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Enforcement of the decision and order of the Board is denied and the order is set aside.

*ENFORCEMENT DENIED; ORDER SET ASIDE.*