**F. W. WOOLWORTH CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 80–1896.**

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1981.

Decided July 31, 1981.

Rehearing and Rehearing En Banc Denied Sept. 16, 1981.

Carpenter, Bennett & Morrissey, Newark, N. J., for petitioner F. W. Woolworth Co.; Francis X. Dee (argued and of counsel), Laurence Reich, Rosemary S. Gousman, Newark, N. J., on brief.

Paul E. Bateman, Atty., N. L. R. B., Washington, D. C. (argued), William A. Lubbers, Gen. Counsel, John E. Higgins, Jr.,

Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Before LAY, Chief Judge, STEPHENSON, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

This case began when an employee of F. W. Woolworth Co. (Woolworth), Eric Withers, filed an unfair labor practice charge with the National Labor Relations Board (Board) protesting his discharge by Woolworth. A Board ALJ subsequently decided that this discharge violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), and this decision was later affirmed by the Board. Woolworth filed a petition for review of the Board's decision and order with this Court and the Board followed with a cross-application for enforcement of its order.

Woolworth is a New York corporation that runs a nationwide chain of retail stores. Its merchandise is distributed to its stores from regional distribution centers, one of which is the Mid-Atlantic Distribution Center (MDAC) in Denver, Pennsylvania. MDAC has been the site of several union organizing campaigns, the most recent one in the spring of 1979. On May 25, 1979, a Board representation election was held and the employees voted against union representation.

During the 1979 campaign, Woolworth held three employee meetings on company time in the MDAC cafeteria to deliver speeches conveying its position on unionization. Employee attendance at these meetings was compulsory. No questions were allowed at these meetings although employees were told they could ask questions on the work floor after the meetings.

Eric Withers had been a vocal critic of Woolworth's failure to assign more female

---

* Earl R. Larson, United States Senior District Judge, District of Minnesota, sitting by designation.

employees to the shipping department at MDAC. He viewed the assignment of only two female employees to the shipping department as insufficient and as representing favoritism towards male employees. After the first two employee meetings, Withers asked General Manager John Mede why there were not more women in the shipping department and was told that work assignments were a management prerogative and was asked "who put you up to this?"

The final employee meeting was begun at 2:30 p. m. on May 24. It was necessary to conclude this meeting by 3:00 p. m. in order to comply with *Peerless Plywood*, 107 N.L.R.B. 427, 33 L.R.R.M. 1551 (1953), which prohibits such meetings within 24 hours of a representation election. When Mede began his speech, Withers interrupted by standing and stating that he wanted to ask a question. Mede told Withers to be seated and Withers sat down for a few minutes. After a few minutes Withers again stood up and again stated that he wanted to ask a question. He was again told to sit down but instead he asked Mede if this was to be another one-sided affair where Mede would "spoon feed" the employees and do all the talking and have the employees do all the listening. This second attempt to ask a question lasted a few minutes and then Withers sat down again. Mede completed the remainder of his speech before 3:00 p. m. After the meeting, on the same day, Withers was informed that he was suspended pending an investigation. Later that day Woolworth sent a mailgram to Withers informing him that he was being discharged for insubordination. The sole basis for the termination was his alleged misconduct at the May 24 meeting.

1. Woolworth has taken advantage of the following provision in section 10(f):

Any person aggrieved by a final order of the Board . . . may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business.

2. Section 7 provides, in pertinent part:

Employees shall have the right to self-organization, to form, join, or assist labor organiza-

## I.  *Jurisdiction*

The jurisdiction of this Court is invoked pursuant to section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f), since Woolworth maintains numerous business facilities within the jurisdiction of this Court and thereby transacts business within this Circuit.[1] Although the alleged unfair labor practice occurred in Denver, Pennsylvania, within the jurisdiction of the Court of Appeals for the Third Circuit, Woolworth has obviously chosen this Circuit in order to rely on the decision in *NLRB v. Prescott Industrial Products Co.*, 500 F.2d 6 (8th Cir. 1974).

## II.  *Concerted Activity*

■ Section 7 of the National Labor Relations Act, 29 U.S.C. § 157,[2] grants employees the right to engage in "concerted activity" for their mutual aid and protection. Section 8(a)(1)[3] makes it an unfair labor practice for an employer to interfere with an employee's exercise of this right. Woolworth argues that the activity at issue here was not concerted since Withers acted alone. Activity is concerted, however, even where only one employee is involved if the employee is enlisting the support of fellow employees. *See NLRB v. Sencore, Inc.*, 558 F.2d 433, 434 (8th Cir. 1977). By pressing for more female employees to be assigned to the shipping department, Withers was seeking to enlist the support of at least some of his fellow employees at MDAC.

■ The Board has held, and we agree, that an employee is engaged in concerted activity when he attempts to ask questions

tions, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

3. Section 8(a)(1) provides:

It shall be unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 of this title.

at a captive audience meeting, convened by management on the subject of unionization, unless the questions are pursuant to a scheme or plan to disrupt the meeting. *See Howell Metal Co.,* —— N.L.R.B. ——, 102 L.R.R.M. 1031 (1980). Woolworth contends that the ALJ made a finding that Withers was engaged in individual, rather than concerted, activity. The finding, however, was that Withers had not taken part in a scheme or plan to disrupt the meeting.[4]

### III. *The Unfair Labor Practice*

■ Where an employer discharges an employee in these circumstances, the Board must balance the employee's right to engage in concerted activity against the employer's right to maintain order and respect. This balancing permits some leeway for impulsive behavior on the part of the employee. *NLRB v. Thor Power Tool Co.,* 351 F.2d 584, 587 (7th Cir. 1965). The Board's performance of this balancing test, unless illogical or arbitrary, ought not to be disturbed. *Id.*

■ Woolworth argues that the present case is controlled by *NLRB v. Prescott Industrial Products Co.,* 500 F.2d 6 (8th Cir. 1974), where an employer delivered a captive audience speech to employees pointing out the disadvantages of unionization. At or about the end of the speech, an employee persisted in his attempt to ask a question despite requests by the employer to sit down as there was no question and answer period allowed. After the employer refused to entertain the question several times, the employee and some 20 or 25 fellow employees walked out of the meeting. The employee was subsequently discharged for insubordination.

In *Prescott* this Court adopted the balancing principles of *Thor Power Tool* and in the present case we find the Board's performance of this balancing test neither illogical nor arbitrary. Withers' behavior was impulsive; he sat down after his first attempt to ask a question and did not remain standing long following his second attempt. As noted in *Prescott*:

The Board apparently is enunciating a general principle that insolvent, rough, and intimidating conduct cannot serve as a basis for discharge if that conduct is carried out in connection with the assertion of protected activity under § 7 of the Act and that unless such improper conduct, including threats, intimidations and acts adverse to the operation of the employer's business is "egregious," the same must be accepted as a normal and usual incident of labor-management relationships. 500 F.2d at 11 (quoting *NLRB v. Red Top, Inc.,* 455 F.2d 721, 728 (8th Cir. 1972)).

The conduct here certainly wasn't "egregious"; in fact, Mede was even able to complete his remarks before 3:00 p. m.

*Prescott* is distinguishable from the case before us in that in *Prescott* the employee and others walked out of the meeting. The meeting in *Prescott,* and the meeting here, were held on company premises and on company time. Walking out of such a meeting, accompanied by 20 or 25 fellow employees, directly challenges management's right to maintain order and respect and tips the balance in favor of the employer. On the other hand, in Withers' case the reaction of fellow employees was negative, marked by cat calls and even profanity, urging him to sit down and shut up. Withers' interruptions were no threat to Woolworth's interest in maintaining discipline or respect. Further, Withers' inability to receive a meaningful response from Mede concerning his complaint about the assignment of female employees after the first two employee meetings tips the balance in the present case in the other direction. Woolworth's failure to provide a meaningful outlet for the exercise of Withers' right to engage in concerted activity weighs heavily against Woolworth.

Accordingly, Woolworth's petition for review and for the setting aside of the

---

**4.** In *Prescott* this Court did not reach the question of whether the activity involved was concerted or individual. *See* 500 F.2d at 7.

Board's decision and order is denied and the Board's order is enforced.