927 F.2d 597
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TRAYCO OF SOUTH CAROLINA, INCORPORATED, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
TRAYCO OF SOUTH CAROLINA, INCORPORATED, Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Petitioner.
 Nos. 90-2324, 90-2339.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1990.
Decided March 4, 1991.
 
 On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board.
 Jeffrey Michael Bernbach, New York City, argued, for Petitioner.
 
 
 1
 Nancy Janet Gottfried, National Labor Relations Board, Washington, D.C., argued for Respondent, Jerry M. Hunter, General Counsel, Robert E. Allen, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Barbara A. Atkin, Supervisory Attorney, National Labor Relations Board, Washington, D.C., on brief.
 
 NLRB
 
 2
 ENFORCEMENT DENIED; ORDER SET ASIDE.
 
 HOUCK, District Judge:
 
 3
 This case is before the court on the petition of Trayco of South Carolina, Inc. (Trayco) seeking review of an order of the National Labor Relations Board (Board) and the Board's cross-application for enforcement. The Board found that Trayco violated sections 8(a)(1) and (4) of the National Labor Relations Act (Act), 29 U.S.C. Sec. 158(a)(1) and (4), by first warning and then discharging Katie Marlowe (Marlowe) because of her protected concerted activities. Because we find that Marlowe was not engaged in protected concerted activity, we deny enforcement.
 
 I.
 
 4
 Trayco is a wholesale distributor of plumbing specialties and replacement parts. Marlowe's discharge from employment with the company arose from her dissatisfaction over wages. Marlowe filed an unfair labor practice charge with the Board alleging that she had been disciplined and discharged because of her protected concerted activities. A hearing was held before an administrative law judge. The following facts were developed at that hearing.
 
 
 5
 Marlowe was hired as a warehouse employee at Trayco by the company owner, James Turner (Turner), on February 1, 1988. She worked throughout the company on an as needed basis until she was assigned to the position of section head for the hardware and tool section by Ben Hewett (Hewett), the warehouse manager. She continued to work in that section until her termination on January 6, 1989, by Turner who was then company president.
 
 
 6
 Marlowe was originally hired at the wage rate of $5.50 per hour. During the first month of her employment, Marlowe received an unsolicited wage increase to $6.00 per hour. Although there is conflicting evidence regarding the exact amounts and dates, the record clearly establishes that Marlowe also received at least one and possibly two other unsolicited raises that brought her wage rate to $6.50 per hour by the end of July 1988.
 
 
 7
 In late July or early August of 1988, after learning that certain employees were earning more than employees with greater seniority, Marlowe went to Turner's office and requested another raise. She explained that she had heard that some newer employees were making more than employees with greater seniority. Upon being questioned as to how she had obtained this information, Marlowe informed Turner that employees talk to each other. Turner responded that he should fire everybody and start over. Nevertheless, he granted Marlowe's request and gave her a raise of thirty cents per hour.
 
 
 8
 In August of 1988, Marlowe also complained to warehouse manager Hewett about her dissatisfaction with the wage situation. In addition, she discussed the wage situation with other employees. On January 6, 1989, Marlowe discovered that an employee with less seniority was still earning a higher hourly wage than she. She again approached Hewett and complained about the wage disparity. Shortly thereafter, Hewett informed Marlowe that he had discussed her complaints with Turner, and Turner had denied her request for a raise. Marlowe then stated that she would go over Turner's head.
 
 
 9
 Later that day, Hewett approached Marlowe and handed her a written warning, reprimanding her for "job dissatisfaction" and "threatening attitude." Marlowe questioned Hewett about what he meant by "threatening attitude." Hewett replied he assumed that when she said she would go over Turner's head she meant she was going to the labor board. A few minutes later, Hewett directed Marlowe to go to Turner's office. Turner accused Marlowe of being dissatisfied with her job and making untrue statements about the rates of pay of other employees. Marlowe denied making the untrue statements and explained that she did not think it was right for newer employees to make more than those with greater seniority. Marlowe acknowledged that she had made the statement about going over Turner's head and attempted to explain what she meant. At that point Turner became angry and discharged Marlowe.
 
 
 10
 The Board found, in agreement with the administrative law judge, that Trayco violated sections 8(a)(1) and (4) of the Act by warning Katie Marlowe because of her protected concerted activities and its belief that she intended to seek the assistance of the Board. The Board also found that Trayco violated section 8(a)(1) of the Act by discharging employee Marlowe because of those protected concerted activities.
 
 II.
 
 11
 After hearing oral arguments and reviewing the record, we conclude that the evidence is insufficient to sustain the Board's order. To establish that an individual employee is engaged in protected concerted activity, the evidence must show that she is seeking either to enforce a collective bargaining agreement, to induce group action, or to act on behalf of other employees. Tyler Business Services, Inc. v. NLRB, 680 F.2d 338, 339 (4th Cir.1982) (applying Blaw-Knox Foundry v. NLRB, 646 F.2d 113, 115-16 (4th Cir.1981)).
 
 
 12
 There is no collective bargaining agreement in this case, and the evidence of record fails to establish that Marlowe was either attempting to induce group action or acting on behalf of other employees. Although the record shows that Marlowe discussed her concerns about wages with other employees, there is no evidence to indicate that she sought to induce any type of group action. The evidence is also insufficient to show that Marlowe was speaking for anyone other than herself when she repeatedly complained about the disparity in wages. She clearly was acting on her own and not in concert with fellow employees. Such personal concerns or missions are insufficient to establish concerted activity. Id. Because we conclude that Marlowe was not engaged in protected concerted activity, we find it unnecessary to address the other issues raised by this appeal.
 
 
 13
 The decision and order of the Board in this case is not supported by substantial evidence. Accordingly, enforcement of the decision and order of the Board is denied, and the order is set aside.
 
 ENFORCEMENT DENIED; ORDER SET ASIDE