AFSCME, MICHIGAN COUNCIL, LOCAL 574-A v CITY OF TROY

Docket No. 116924. Submitted April 5, 1990, at Detroit. Decided October 15, 1990.

The City of Troy fire department took disciplinary action against employees Kathleen Powell and Chris Zimny by suspending them for insubordination after Powell and Zimny, as representatives of AFSCME, Michigan Council, Local 574-A, counseled fellow employee and union member Karen Zielesch not to submit to an interview by a personnel officer regarding a grievance filed by another employee unless a union representative was present. The union filed with the Michigan Employment Relations Commission an unfair labor practice charge against the city with respect to the suspension of Powell and Zimny. The commission ruled in favor of the union. The city appealed.

The Court of Appeals *held*:

The public employment relations act makes it unlawful for a public employer to interfere with, restrain or coerce its organized employees' right under the act to engage in lawful concerted activities for the purpose of mutual aid and protection. The act has been interpreted in prior court decisions as granting a public employee the right to have a union representative present at an investigatory interview which the employee reasonably believes might result in disciplinary action against the employee. Here, however, the protections of the act do not extend to Powell and Zimny because Zielesch knew that her interview would not result in any disciplinary action against her. Thus, Powell and Zimny were properly cited for insubordination in counseling Zielesch to insist upon that to which Zielesch had no right under the act.

Reversed.

LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — UNION REPRESENTATION — DISCIPLINARY INVESTIGATIONS.

A public employer does not commit an unfair labor practice by

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1765, 1769, 1770, 1775.

What constitutes unfair labor practice under state public employee relations acts. 9 ALR4th 20.

subjecting to disciplinary action for insubordination those of its employees serving as union representatives who counsel a fellow employee and union member not to submit to an investigatory interview by the employer unless a union representative is present where the employee does not reasonably believe that the interview will result in disciplinary action against the employee (MCL 423.209, 423.210; MSA 17.455[9], 17.455[10]).

*Webb & Hildebrandt, P.C.* (by *Charles D. Brown*), for AFSCME, Michigan Council, Local 574-A.

*Barlow & Lange, P.C.* (by *Craig W. Lange*), for City of Troy.

Before: GRIBBS, P.J., and SHEPHERD and DOCTOROFF, JJ.

DOCTOROFF, J. The City of Troy appeals as of right from an April 4, 1989, decision and order of the Michigan Employment Relations Commission which was contrary to the decision and recommended order of the hearing referee. The commission found that the city committed an unfair labor practice when it disciplined two union officials who were attempting, in good faith, to properly represent a union member. We reverse.

The AFSCME, Council 25, Local 574-A represents a bargaining unit composed of nonpolice employees of the city. Police Service Aide Karen Zielesch, a member of the bargaining unit and an employee of the city since 1984, was the only witness to an indecent exposure committed by another police service aide in the lockup facility of the Troy Police Department. She and her union representative, Kathleen Powell, informed their supervisor of the incident so that the supervisor would be aware of a possible problem. They stated, however, that they wished to avoid any formal action.

On December 9, 1985, Zielesch received the following memorandum:

> Karen: Please report to Chief Carey's office on Thursday, December 12, at 3:30 P.M. The Chief would like to discuss with you an incident that happened in lockup a short time ago that you may have some information on. There is no complaint against you in any way and you will not need a shift rep.

However, after receiving this memorandum, Zielesch did request that the union represent her in any investigation to be conducted.

On December 12, 1985, Zielesch, accompanied by Powell, met with Chief Carey and the internal affairs lieutenant. At the beginning of the meeting Zielesch was given a copy of General Order 17, which provides that all employees are required to cooperate in personnel investigations and may be disciplined for failing to obey an order issued pursuant to General Order 17. During this meeting, Zielesch answered questions regarding the incident in the lockup. She later testified that she was upset before and after the meeting, and with the whole situation.

In January, 1986, the employee who had committed the offense was discharged and the union filed a grievance. In March, Zielesch received a memorandum requesting that she meet with personnel director Ronald Dowell regarding an arbitration hearing on the grievance. Dowell, who had reviewed a transcript of the previous meeting with Chief Carey, testified that he was concerned about Zielesch's reaction to the situation and her apparent reluctance to testify against a fellow employee. According to Dowell, the purpose of the meeting was to allow him to explain defendant's reasons

for taking disciplinary action and to make Zielesch more comfortable with the situation.

On the day the meeting was originally scheduled, Dowell was called away from his office and he told his secretary to notify Zielesch that he would be late. When Dowell returned, his secretary informed him that Zielesch could not attend the meeting that day because union representation was not available. When Dowell called Zielesch to reschedule the meeting he explained to her that the meeting was not disciplinary or investigatory, that she was in no trouble but if she wished the meeting could be scheduled for a time when a union representative would be available in case a problem arose.

The meeting was rescheduled for April 4, 1986. When Zielesch arrived accompanied by Powell, Dowell refused to allow Powell to enter his office. Dowell explained that it was not the type of meeting which would require union representation, but that Powell could wait outside to be available if Zielesch disagreed during the course of the meeting. Powell then told Dowell that under no circumstances would Zielesch talk with him without the benefit of union representation. Dowell responded that he would order Zielesch into his office if necessary.

At that point in time, Powell instructed Zielesch to wait outside of Dowell's office and not to enter until she returned. Powell then went to the office of the union's chapter chairperson, Chris Zimny. When Powell informed Zimny of the circumstances, Zimny told Powell that, if Zielesch got an order from the shift commander to talk without a union representative present, Powell should allow it. Powell then returned to Dowell's office to rejoin Zielesch. When Dowell did not come out of his office, and since it was close to the start of their

work shift, Powell and Zielesch informed Dowell's secretary that they would be at the front desk of the police department if needed. Dowell attempted but was unable to obtain an order at that time from either Chief Carey or a shift commander, and the planned meeting did not take place.

On April 7, Dowell requested that Zimny report to his office along with a union representative. In response to questions from Dowell regarding her advice to Powell and Zielesch, Zimny stated that she told them that Zielesch was entitled to representation, but also that she had no authority to order Zielesch not to enter Dowell's office. According to Dowell, however, Zimny admitted that her advice could have been construed as a directive that the meeting was not to take place without union representation. Zimny testified that she believed the purpose of the April 4 meeting was to coach Zielesch with respect to her testimony at the upcoming arbitration hearing.

On April 14, 1986, both Zimny and Powell received memorandums describing disciplinary actions against them. Zimny was suspended for two days and Powell for one day. Both suspensions were imposed for insubordination in refusing to permit Zielesch to meet with Dowell without union representation where Zielesch was not subject to disciplinary action.

In their decision and order, all three members of the commission agreed with the hearing referee that under the Supreme Court's holding in *National Labor Relations Bd v J Weingarten, Inc,* 420 US 251; 95 S Ct 959; 43 L Ed 2d 171 (1975), Zielesch had no right to union representation at the April 4, 1986, meeting because the record did not indicate that Zielesch had any reasonable basis to believe that she might be disciplined as a result of that meeting. 420 US at 256. See also *Wayne-*

*Westland Education Ass'n v Wayne-Westland Community Schools,* 176 Mich App 361; 439 NW2d 372 (1989), lv den 433 Mich 910 (1989); *Regents of the University of Michigan v Local 1583, AFSCME,* 1977 MERC Lab Op 496 (adopting the *Weingarten* rule under the public employment relations act).

However, contrary to the recommendation of the hearing officer, the majority on the commission panel concluded that disciplining union officials Zimny and Powell for giving "good faith, but mistaken advice" to Zielesch regarding her right to union representation under *Weingarten* was a violation of section 10(1)(a) of the public employment relations act (PERA), MCL 423.210(1)(a); MSA 17.455(10)(1)(a). We disagree. While § 10 (1)(a) prohibits public employers from interfering with public employees in the exercise of their rights under § 9 of PERA "to engage in lawful concerted activities for the purpose of . . . mutual aid and protection . . . ," MCL 423.209; MSA 17.455(9), we do not find that the actions of Zimny and Powell which are at issue in this case were entitled to protection.

We cite with approval the following excerpt from the decision of the hearing officer, which was also found persuasive by the commission's dissenting member:

> Misconduct in the course of concerted activity, including insubordination, is not beyond an employer's right to discipline. *North Ottawa Community Hosp* [1982 MERC Lab Op 555], *supra; City of Detroit (Fire Dep't),* 1986 MERC Lab Op 14; *Michigan State Univ,* 1983 MERC Lab Op 419; see also *NLRB v Burnup & Sims* [,] *Inc,* 379 US 21 [85 S Ct 171; 13 L Ed 2d 1], 57 LRRM 2385 (1964). When Union representatives Howell [sic] and Zimny advised Zielesch not to cooperate with the Employer

except under the circumstances they dictated they were subsequently disciplined for insubordination. A similar situation was considered by the NLRB in *Manville Forest Products Corp* [269 NLRB 72]; 115 LRRM 126[6] (1984). In that case a Union representative was disciplined for advising employees not to respond to employer questions in connection with an investigation of alleged misconduct in the plant. In response to the contention that the Employer could not lawfully suspend the union steward because of the advice he gave employees while acting in his official capacity, the NLRB stated:

"The Board has never held that a union official's advice is entitled to such wide reaching protection. If, for example, a union steward interferes with management by advising employees to refuse to obey their superior's orders, such conduct is unprotected . . . it is within an employer's legitimate prerogative to investigate misconduct in its plant and to do so without interference from any of its employees—including those who are union officials. Thus, if a steward interferes with such an inquiry by advising employees not to cooperate—advice which, if followed, could lawfully result in the employees themselves being disciplined—it defies logic to conclude that such advice is entitled to protection solely because of its source. When a union steward is disciplined for violating job rules and not because of his position as a union official, the steward cannot look to his union status for protection." [115 LRRM at 1267.]

The dissenting member of the commission also correctly noted that the cases relied upon by the majority did not accurately support their position, stating:

*MERC v Reeths-Puffer School Dist,* 391 Mich 253; [215 NW2d 672] (1974), involved an employee's attempt to file a grievance in good faith over a matter affecting him and which was a right claimed under a collective bargaining agreement.

This is a classic example of what every employee is entitled to and arises from rights basic and fundamental to grieve. Likewise, in *Dickinson County Sheriff and Board of Commissioners,* 1982 MERC Lab Op 747, the union president in his urgings of unpaid volunteers not to accept county fair assignments which would reduce overtime pay for members of his unit, was fulfilling a time honored right to protect and preserve unit work covered by a labor agreement. And in *60th District Court,* 1979 MERC Lab Op 558[,] and *Brighton Area Schools Board of Education,* 1982 MERC Lab Op 1607, the attempt of the employer to discipline employees for remarks made at union meetings were [sic] not only violative of basic union membership entitlements, but constituted an impressive intrusion of fundamental rights of free speech. These cases are not in tandem with the facts existing in this case. To find them supportive, it would have been necessary to conclude that *Weingarten* rights were involved (*NLRB v Weingarten, Inc,* 420 US 251). As my colleagues note, no *Weingarten* violation was committed here.

The union argues that the actions of Zimny and Powell concerning the April 4, 1986, meeting, should be excused because, although they were mistaken in their belief that Zielesch's *Weingarten* rights were involved, they nevertheless acted in "good faith." While we agree that an employee cannot be disciplined for "attempting in good faith to enforce a right claimed under a collective bargaining agreement," *Reeths-Puffer, supra* at 265, there was absolutely no basis for Zimny or Powell to have reasonably believed that any such right was at risk here.

In the first place, we see no reason to excuse the actions of Zimny or Powell with regard to the April 4, 1986, meeting on the basis of a good faith mistake *of fact.* The record indicates that both of them were fully informed of the situation faced by

Zielesch prior to advising her not to cooperate with Dowell without an express order from a shift commander. Since Zielesch herself could have had no reasonable basis on which to have feared discipline as a result of the April 4, 1986, meeting, neither Zimny nor Powell could have reasonably believed the situation to be otherwise.

Further, we see no reason to excuse their conduct based on a good faith mistake *of law.* In cases involving federal law, the federal courts have held union officials to a higher standard than the rank and file to uphold rights and duties under the collective bargaining agreement. *NLRB v Armour-Dial, Inc,* 638 F2d 51; 106 LRRM 2265 (CA 8, 1981); *Gould, Inc v NLRB,* 612 F2d 728; 103 LRRM 2207 (CA 3, 1979); *Indiana & Michigan Electric Co v NLRB,* 599 F2d 227; 101 LRRM 2475 (CA 7, 1979). The commission majority in this case was concerned that

> [w]hether *Weingarten* applies to a situation is a complex question often debated by legal experts, as illustrated by this case. Its application, as set forth in the Administrative Law Judge's decision, turns on the presence of several elements, most of which have been given additional elaboration and clarification by case law. Given this state of the law and their perception that Zielesch honestly feared discipline, Zimny and Powell, who are not legal experts, could reasonably have concluded that Zielesch was entitled to *Weingarten* rights.

However, we find that this stated concern misapprehends not only the holding of *Weingarten,* but the purpose behind that holding as well. The question is not whether Zielesch "honestly" feared discipline, but whether she "reasonably" feared discipline, and the entire commission found that she did not. See *Weingarten,* 420 US at 252, and *Wayne-Westland Education Ass'n, supra.*

Further, *Weingarten* did not make the decision whether to demand union representation at investigatory meetings more complicated for union officials or their members, it made it easier. As cited previously, § 9 of PERA permits public employees "to engage in lawful concerted activities for the purpose of . . . mutual aid and protection . . . ." MCL 423.209; MSA 17.455(9). Section 9 is similar to § 7 of the National Labor Relations Act, 29 USC 157, under which *Weingarten* was decided. By implying a "reasonableness" standard not otherwise expressed in the statute, the *Weingarten* Court provided employees with a greater margin for error to demand representation at such meetings without fear of later disciplinary action by their employer should hindsight prove that their reasonable beliefs were in fact mistaken.

However, we reiterate that the commission in this case unanimously found that Zielesch did not have *any* reasonable basis on which to fear discipline as a result of the April 4, 1986, meeting. We find that conclusion to be supported by competent, material and substantial evidence in the record. *Wayne-Westland Education Ass'n, supra* at 364. However, we find it to be contradictory, and in error, for the majority of the commission to have concluded that the city committed an unfair labor practice for disciplining Zimny and Powell, where from the record there is no competent, material or substantial evidence that either of them had any greater reason to believe that Zielesch faced possible discipline at that meeting with Dowell than did Zielesch herself. Since no *Weingarten* rights were involved, the advice of Zimny and Powell to Zielesch not to cooperate with Dowell, except under conditions dictated by them, was not activity

protected by § 9 of PERA. Consequently, defendant's subsequent disciplinary actions against them did not violate § 10(1)(a) of PERA.

Reversed.