MICHIGAN EDUCATION ASSOCIATION v
CHRISTIAN BROTHERS INSTITUTE OF MICHIGAN

Docket No. 256256. Submitted January 11, 2005, at Detroit. Decided
    August 16, 2005, at 9:00 a.m.

    The Michigan Education Association petitioned the Michigan Employment Relations Commission (MERC) for the right to hold an election to decide whether the petitioner would serve as the collective bargaining representative for the teaching staff of the Christian Brothers Institute of Michigan, doing business as Brother Rice High School, a Roman Catholic high school for boys. Following proceedings before a hearing referee, MERC ordered that an election be held. The respondent appealed, and the Court of Appeals granted a stay of the election pending resolution of the appeal.

    The Court of Appeals *held*:

    Nothing in the labor mediation act, MCL 423.1 *et seq.*, grants MERC jurisdiction over labor issues that arise in parochial schools. MERC's role in the negotiation of employment contracts would present a significant risk of the type of entanglement with religion that is proscribed by the Michigan Constitution. Const 1963, art 1, § 4. The Legislature would not have intended to enter this constitutionally sensitive area without a clear expression of affirmative intention, as it did in the private schools act, MCL 388.551 *et seq.* The Legislature did not intend to grant MERC jurisdiction over lay teachers in parochial schools.

    MERC orders vacated and petition claims dismissed.

MASTER AND SERVANT — LABOR MEDIATION ACT — PAROCHIAL SCHOOLS — LAY
    TEACHERS — MICHIGAN EMPLOYMENT RELATIONS COMMISSION.

    The Legislature did not grant the Michigan Employment Relations Commission jurisdiction over lay teachers in parochial schools (Const 1963, art 1, § 4; MCL 423.1 *et seq.*).

*White, Schneider, Young & Chiodini, P.C.* (by *William F. Young* and *Timothy J. Dlugos*), for the petitioner.

*Clark Hill PLC* (by *William A. Moore*) for the respondent.

Amici Curiae:

*La Rae G. Munk* for Action Institute for the Study of Religion and Liberty.

*Jay Alan Sekulow* and *Walter M. Weber,* and *Steven M. Jentzen, P.C.* (by *Steven M. Jentzen*), for The American Center for Law and Justice.

*Berry Moorman, P.C.* (by *Robert W. Morgan*), for the University of Detroit Jesuit High School and Academy.

*Bernardi, Ronayne & Glusac, P.C.* (by *John J. Ronayne, III*), for the Catholic Central High School of Detroit.

*Mark H. Cousens* for the Michigan Federation of Teachers and School Related Personnel, AFT, AFL-CIO.

*Bodman LLP* (by *Thomas Van Dusen, Karen L. Piper,* and *Jane Derse Quasarano*) for the Archdiocese of Detroit.

Before: SCHUETTE, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM. Respondent appeals as of right a decision and direction of election issued on May 26, 2004, by the Michigan Employment Relations Commission (MERC) granting petitioner the right to hold an election among respondent's teaching staff to determine whether petitioner would serve as their collective bargaining representative. MERC's orders are vacated and all the claims in the petition are dismissed.

I. FACTS

Respondent is a Roman Catholic high school for boys, "sponsored by the Congregation of Christian brothers." While respondent is ultimately owned by the Catholic Church under canon law, the Archdiocese of Detroit does not provide financial support to the school. Respondent and its faculty follow the teachings of Brother Edmund Rice with the primary goals and focus of a Christian Brothers education having been distilled in the essential elements of a Christian Brothers education. Faculty members of respondent are expected to initiate and end class with a prayer and integrate into the curriculum the teachings of Brother Edmund Rice and "good Christian attitudes." A daily religion class is part of the curriculum, and all students are required to attend, along with periodic school-wide liturgies. While not all students attending respondent are Catholic, they are expected to attend, if not participate in, ongoing religious instruction. Respondent's faculty is primarily comprised of lay teachers, not all of whom are Catholic or Christian. Faculty members are to promote and identify "opportunities to encourage faith-building." Members of the Congregation of Christian Brothers are lay individuals and not ordained as priests, but the congregation is deemed a "religious organization." The members are described as living "a consecrated life," taking "vows of poverty, chastity and obedience."

Before the initiation of this lawsuit, respondent's lay faculty participated in an informal association for contract and labor negotiations. Petitioner filed a petition for election, seeking permission to have petitioner certified as the lay faculty's exclusive bargaining representative. On July 22, 2003, an administrative hearing was conducted before a hearing referee in order to "prepare a full factual record." Following stipulation by the

parties that the proposed bargaining unit was comprised of all full-time and part-time teachers, excluding administrative staff, respondent objected that using Michigan's labor mediation act (LMA), MCL 423.1 *et seq.*, to regulate labor relations for a religious organization is restricted by the First Amendment of the United States Constitution and art 1, § 4, of the Michigan Constitution.

Following a review of the record, the parties' respective briefs, and the exhibits, MERC issued a decision and direction of election. MERC determined that, pursuant to § 28 of the LMA, respondent's identified faculty "will vote on whether or not they wish to be represented for the purposes of collective bargaining by the Michigan Education Association." We granted a stay of the election and immediate consideration of the appeal.

## II. STANDARD OF REVIEW

We will set aside a legal ruling by MERC if it runs afoul of the law or is otherwise tainted by a serious legal error. *Gogebic Community College Michigan Ed Support Personnel Ass'n v Gogebic Community College*, 246 Mich App 342, 349; 632 NW2d 517 (2001). Legal rulings by MERC " 'are afforded a lesser degree of deference' because review of legal questions remains de novo, even in MERC cases." *St Clair Co Ed Ass'n v St Clair Co Intermediate School Dist*, 245 Mich App 498, 513; 630 NW2d 909 (2001), quoting *Grand Rapids Employees Independent Union v Grand Rapids*, 235 Mich App 398, 403; 597 NW2d 284 (1999).

## III. ANALYSIS

Respondent asserts that MERC's application of Michigan's LMA is contrary to law and a violation of the

religious liberty provisions of the First Amendment, US Const, Am I, and the Michigan Constitution, Const 1963, art 1, § 4. We do not reach this issue, except to say that the government's intervention into a parochial school's labor decisions has been held by the United States Supreme Court to raise substantial First Amendment concerns. *NLRB v Catholic Bishop of Chicago*, 440 US 490, 501-503; 99 S Ct 1313; 59 L Ed 2d 533 (1979). Respondent also asserts that the LMA is not applicable to it as a religiously affiliated school because the United States Supreme Court's decision in *Catholic Bishop* applies and opposes MERC's assumption of jurisdiction over this case. We agree. "The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent." *Ross v Michigan*, 255 Mich App 51, 55; 662 NW2d 36 (2003).

In *Catholic Bishop*, the Supreme Court held that the National Labor Relations Act (NLRA), 29 USC 151 *et seq.*, did not authorize the National Labor Relations Board (NLRB) to exercise jurisdiction over lay faculty at a church-operated school. While *Catholic Bishop* "was decided strictly on statutory interpretation grounds," *South Jersey Catholic School Teachers Org v St Teresa of the Infant Jesus Church Elementary School*, 150 NJ 575, 584; 696 A2d 709 (1997), we agree with the approach the Court used in *Catholic Bishop* to determine the legislative intent behind the statutory grant of jurisdiction to the labor board. Therefore, our interpretation of Michigan's statute conforms with the Supreme Court's holding in *Catholic Bishop*.

The Court in *Catholic Bishop* specifically based its holding on the lack of congressional intent to grant the NLRB jurisdiction over parochial schools, but the reasoning underlying its holding is universal. The Court first analyzed the NLRA's application to parochial

schools to determine "whether the exercise of the Board's jurisdiction presents a significant risk that the First Amendment will be infringed." *Catholic Bishop, supra* at 502. After analyzing the potential questions the board might be required to resolve, the Court stated, "We see no escape from conflicts flowing from the Board's exercise of jurisdiction over teachers in church-operated schools and the consequent serious First Amendment questions that would follow." *Id.* at 504. Therefore, the Court held that Congress would not grant the NLRB jurisdiction over an area that created such a risk of infringement without a "clear expression of an affirmative intention . . . that teachers in church-operated schools should be covered by the Act." *Id.*

In our case, the Michigan Legislature drafted the enabling legislation for MERC (and its predecessor, the Labor Mediation Board) against the backdrop of two constitutional provisions in our Michigan Constitution in addition to provisions contained in the United States Constitution. Const 1963, art 1, § 4, art 8, § 1. In art 8, § 1, our Constitution proclaims, "Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." Art 1, § 4 states, "Every person shall be at liberty to worship God according to the dictates of his own conscience. No person shall be compelled . . . to pay tithes, taxes, or other rates for the support of any . . . teacher of religion." We find that MERC's role in the negotiation of employment contracts would present more of a "significant risk" of entanglement proscribed by the Michigan Constitution than the risk found by the Supreme Court in *Catholic Bishop*. Accordingly, we will not find that the Legislature intended to enter this constitutionally sensitive area without first finding a "clear expression of affirmative intention . . . ." *Catholic Bishop, supra.*

The LMA is "intended to prevent strikes and lockouts and other forms of industrial strife for the good people of the State of Michigan." *Local Union No 876 v Labor Mediation Bd*, 294 Mich 629, 633; 293 NW 809 (1940). However, nothing in the LMA expressly grants MERC jurisdiction over labor issues that arise in parochial schools. Although the Legislature has expressly subjected parochial schools to certain regulations found in the private schools act, MCL 388.551 *et seq.*, the LMA does not specifically subject parochial schools to the authority of MERC. The United States Supreme Court in *Catholic Bishop* held that nearly identical language in the NLRA did not suffice to express Congress's particular intention to subject parochial schools to the jurisdiction of the NLRB. Compare MCL 423.2 with 29 USC 152. Therefore, we follow the reasoning of the United States Supreme Court and hold that our Legislature did not intend to grant MERC jurisdiction over lay teachers in parochial schools. It follows that MERC's orders are vacated and all the claims in the petition are dismissed. MCR 2.116(C)(4).

Vacated and dismissed.