INGHAM COUNTY v CAPITOL CITY LODGE NO 141 OF THE
FRATERNAL ORDER OF POLICE, LABOR PROGRAM, INC

Docket No. 263956. Submitted February 7, 2007, at Lansing. Decided
April 3, 2007, at 9:05 a.m.

Capitol City Lodge No. 141 of the Fraternal Order of Police, Labor
Program, Inc., filed a grievance in the Michigan Employment
Relations Commission (MERC) against Ingham County and the
Ingham County Sheriff, alleging a violation of § 10(1)(a) and (c) of
the public employment relations act (PERA), MCL 423.210(1)(a)
and (c), relating to the respondents' disciplining of Ingham County
Sheriff Detective Laurie Siegrist, the division president of the
charging party (the union). Siegrist was disciplined for violating
the sheriff's written work rule (Rule 106) when, without prior
authorization, she faxed to an attorney for the union an internal
memorandum regarding a new policy that required all detectives
to wear pagers while on and off duty. A hearing referee found that
PERA had been violated, and MERC adopted the referee's findings
and conclusions. The respondents appealed from the MERC order.

The Court of Appeals *held*:

1. A three-part test is employed in analyzing whether an
employer can lawfully apply an employment rule to discipline an
employee for engaging in what would otherwise be activity pro-
tected under § 9 of PERA, MCL 423.209, which makes it lawful for
public employees to engage in lawful concerted activities for the
purpose of collective negotiation or bargaining or other mutual aid
and protection. First, it must be determined whether the employ-
er's action adversely affected the employee's protected right to
engage in lawful concerted activities under PERA. Second, it must
be determined whether the employer has met its burden to
demonstrate a legitimate and substantial business justification for
instituting and applying the rule. Third, the diminution of the
employee's rights resulting from the application of the rule must
be balanced against the employer's interests that are protected by
the rule.

2. The sheriff's action did not adversely affect Siegrist's pro-
tected right to engage in lawful concerted activities under PERA.

The sheriff's application of Rule 106 does not constitute an unfair labor practice because application of the rule does not inhibit protected activity.

3. Any internal documents produced by the sheriff's department and circulated internally only are confidential by simple virtue of Rule 106, which prohibits the release of any internal documents without prior authorization. Siegrist cannot rely on her union status for protection because she was disciplined for violating job rules and not because of her position as a union official.

4. The union and its counsel are members of "the public," for purposes of applying Rule 106, to the extent that they are not employees of the sheriff's department.

5. The respondents demonstrated a legitimate and substantial business justification for instituting Rule 106 and applying it in these circumstances. The content of the memorandum is irrelevant. What is relevant is the sheriff's interest in ensuring uniformity in disclosure of potentially sensitive internal documentation. It is the employer, not an employee, who is in the position to assess the propriety of releasing internal documentation.

6. The interest of the county and the sheriff in keeping all internal documents out of the public forum absent department authorization for release outweighs Siegrist's right to engage in protected activity under PERA.

Reversed.

SCHUETTE, J., dissenting, stated that the disciplining of Siegrist for giving the memorandum to the union's attorney had an adverse effect on her ability to engage in concerted activity under PERA. Employees are entitled to use for self-organizational purposes information and knowledge that comes to their attention in the normal course of work activity and association, but are not entitled to the employer's private and confidential records. The memorandum was received by Siegrist in the normal course of her work, was not labeled confidential, and did not contain information that would have led her to believe that the information was confidential. The sheriff did not show a substantial business justification for applying Rule 106 in this situation. The decision of MERC should be affirmed.

MASTER AND SERVANT — PUBLIC EMPLOYMENT RELATIONS ACT — EMPLOYMENT RULES.

A three-part test is used to analyze whether an employer can lawfully apply an employment rule to discipline an employee for

what would otherwise be activity protected under the public employment relations act; first, it must be determined whether the employer's action adversely affected the employee's protected right to engage in lawful concerted activities under the act; second, it must be determined whether the employer has demonstrated a legitimate and substantial business justification for instituting and applying the rule, and, third, the diminution of the employee's rights resulting from the application of the rule must be balanced against the employer's interests that are protected by the rule (MCL 423.209).

*Cohl, Stoker, Toskey & McGlinchey, P.C.* (by *John R. McGlinchey*), for Ingham County and Ingham County Sheriff.

*Wilson, Lett & Kerbawy, PLC* (by *Steven T. Lett*), for Capitol City Lodge No. 141 of the Fraternal Order of Police, Labor Program, Inc.

Before: WHITBECK, C.J., and BANDSTRA and SCHUETTE, JJ.

WHITBECK, C.J. This case arose when respondents Ingham County (the county) and Ingham County Sheriff (the sheriff) disciplined Detective Laurie Siegrist, the division president of the charging party, Capitol Lodge No. 141 of the Fraternal Order of Police, Labor Program, Inc. (the union). The county and the sheriff charged that Detective Siegrist violated the sheriff's written work rules when, without prior authorization, she faxed to an attorney for the union an internal memorandum regarding a new policy that required all detectives to wear pagers while on and off duty. The union then filed a grievance for unfair labor practice against the county and the sheriff with the Michigan Employment Relations Commission (MERC). The hearing referee concluded that the county and the sheriff violated MCL 423.210(1)(a) and (c) of the public em-

ployment relations act (PERA)[1] by enforcing the rule requiring prior authorization against Detective Siegrist. MERC adopted the hearing referee's recommendation. The county and the sheriff appeal as of right that MERC order. We reverse.

### I. BASIC FACTS AND PROCEDURAL HISTORY

#### A. UNDISPUTED FACTS

We quote the following facts from the decision and recommended order of the hearing referee, which were adopted by MERC and are not in dispute. The findings of MERC "with respect to questions of fact if supported by competent, material, and substantial evidence on the record considered as a whole shall be conclusive."[2]

Rule 106 of [the sheriff's] internal rules and regulations is entitled "Records and Information Security." It provides, in relevant part:

The Department recognizes that its Members, by virtue of their position, will gain access to sensitive and restricted information. What is learned as a Member cannot be disseminated for other than Departmental purposes and then only through approved procedures.

All information, records, software, hardware, data and related equipment used, maintained, owned, produced, licensed, or managed by the Department are the property of the Department and may not be used, copied, reproduced, released, or viewed except in accordance with Department procedures.

No Departmental documents to include, but not limited to, reports, photographs, memos, and official records shall be released to the public without authorization and in compliance with the Freedom of Information Act.

---

[1] MCL 423.201 *et seq.*

[2] MCL 423.216(e).

On March 11, 2003, Lieutenant Jeff Joy used Respondent's e-mail system to send the following memo to all Respondent's detectives, including Siegrist:

"Re: Pagers

"It's been brought to my attention that some of you are under the impression that you do not have to carry your department pager with you off duty. This is [sic] memo is to inform you that you are required to carry your pager with you when you are *on* and *off duty*. If you have any questions, I will be available." [Emphasis in original.]

Later that day, two detectives asked Siegrist if [the sheriff] could lawfully implement a new rule requiring them to wear pagers off duty. Siegrist told them she was not sure. Siegrist phoned [the union's] attorney, R. David Wilson. They discussed the issue, and Wilson asked her to fax him a copy of the memo.

On March 12, Wilson sent . . . Undersheriff Matthew Myers the following letter:

"The attached memorandum was just forwarded to my office by Lodge representatives for my consideration and review.

"I am informed that members of the Detective Bureau have never been required to carry their Department pager when they are off duty. Obviously, the attached memorandum changes this requirement. Aside from on-call overtime considerations, such a change constitutes a change in working conditions that requires collective bargaining before the change can be implemented. As I am sure you know, no bargaining regarding this issue has ever taken place.

"The purpose of this letter is to demand that collective bargaining proceedings regarding this issue occur *before* this change in working conditions is implemented." [Emphasis in original.]

On March 17, Myers sent a memo to all detectives with a copy of the [sic] Wilson's March 12 letter attached. The memo stated that an internal document authored by Lieu-

tenant Joy was distributed to Wilson without authoriza-
tion, and that this action violated Department Rule 106.

On March 20, Siegrist received a written verbal warn-
ing[3] for violating Rule 106. The warning, which was
placed in Siegrist's personnel file, stated:

"Even though you are the Union President you do not
have the right to freely distribute Department memo's [sic]
and/or documents. It is not for you to decide which docu-
ments are to be made public. Your union has the ability to
request public documents and certainly knows the proce-
dure for doing this. The Sheriff's Office cannot and will not
tolerate employees (even those who are union representa-
tives) freely circulating Sheriff's Office documents. Proce-
dures are in place to release documents and those proce-
dures must be followed." [MERC hearing referee decision
and recommended order.]

### B. THE HEARING REFEREE'S CONCLUSION

The hearing referee concluded that disciplining De-
tective Siegrist for giving a copy of the memorandum to
the union's attorney violated PERA by infringing on
Detective Siegrist's right to engage in protected "con-
certed activities." More specifically, the hearing referee
concluded that Detective Siegrist was engaged in lawful
concerted activity when she sought the union attorney's
opinion regarding a condition of employment. The
hearing referee acknowledged that the union was not
directly challenging Rule 106; she recognized that "the
only issue here is whether [the sheriff] could lawfully
discipline an employee for violating an otherwise legiti-
mate work rule in the course of conduct that would
otherwise be protected by PERA." Continuing her
analysis, the hearing referee stated as follows:

---

[3] While it may sound like an oxymoron, a "written verbal warning" is
an established disciplinary measure used in the sheriff's department's
disciplinary scheme.

[The Sheriff] argues that instead of giving Wilson a copy of the memo, Siegrist could have made a formal request for the document.[1] However, Siegrist testified that when she read the memo she did not know whether it constituted a violation of [the sheriff's] bargaining duty. Siegrist had a legitimate interest in discussing the memo with Wilson without [the sheriff] knowing about their discussion. Moreover, by providing Wilson with a copy of the memo, Siegrist ensured that Wilson knew exactly what [the sheriff] had told employees, so he could accurately determine whether [the sheriff] had overstepped its rights. I also conclude that [the sheriff] did not establish a legitimate and substantial business justification for applying Rule 106 to Siegrist's conduct. [The sheriff] has a legitimate interest in preventing the unauthorized disclosure of confidential information and documents to the public. However, [the sheriff] did not offer a business justification for prohibiting Siegrist, a member of the [union's] bargaining [unit], from giving Wilson, a non-employee agent of [the union], a document clearly relevant to the wages, hours, and terms and conditions of employment of bargaining unit employees. Balancing [the sheriff's] general interest in protecting the confidentiality of its information against the effect of the discipline on Siegrist's ability to exercise her Section 9 rights, I conclude that [the sheriff] violated Section 10(1)(a) and (c) by disciplining Siegrist . . . .

---

[1] [The sheriff] admits that, upon receipt of a proper request, it would have been required to provide [the union] with a copy of Joy's memo pursuant to [the sheriff's] duty to provide information and/or the Michigan Freedom of Information Act, MCL 15.231 et seq.

---

The hearing referee recommended that MERC enter an order directing Ingham County to: (1) cease and desist from applying Rule 106 in a way that "interferes, restrains or coerces employees in the exercise of their rights guaranteed under Section 9 of PERA"; (2) remove the relevant written verbal warning from Detec-

tive Siegrist's personnel file; and (3) post a notice to employees regarding this matter.

### C. MERC'S DECISION

MERC subsequently adopted the hearing referee's recommended order as its order. In its opinion, MERC concluded as follows:

> No claim is made, nor is there evidence to support a claim, that Siegrist's disclosure to [the union's] attorney dealt with a confidential matter pertaining to security. The [sheriff] argues that [the union] had no right to receive the document disclosed by Siegrist. It does not dispute [the union's] right to receive the information contained in that document.

MERC declined "to hold that the [sheriff's] legitimate business interest permits it to ban disclosures that categorically include communications protected by PERA." According to MERC:

> Although an employer has a legitimate business interest in preventing the unauthorized disclosure of confidential information, there has been no showing here of a business justification for prohibiting Siegrist from giving [the union's] attorney a document pertaining to a condition of employment affecting bargaining unit employees. Siegrist was engaged in lawful concerted activity within the meaning of Section 9 of PERA when she sought Wilson's opinion as to [the sheriff's] right to require, without bargaining, that bargaining unit members wear pagers while off duty. Where there is no overriding legitimate business interest in protecting the information from disclosure, rights guaranteed by PERA remain paramount.

### II. PERA VIOLATION

#### A. STANDARD OF REVIEW

The county and the sheriff argue that MERC erred by holding that the county and the sheriff violated

PERA by disciplining Detective Siegrist for disseminating the memorandum to the union's attorney. This Court reviews MERC decisions to determine whether they were "authorized by law."[4] A MERC decision may be set aside on appeal if it is based on a "substantial and material error of law."[5] This Court reviews de novo MERC's legal conclusions.[6]

B. RELEVANT AUTHORITY

The relevant statutory provisions in this case of first impression are §§ 9 and 10 of PERA. Section 9 states, in pertinent part, that "[i]t shall be lawful for public employees . . . to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection . . . ."[7] Further, § 10 makes it "unlawful for a public employer or an officer or agent of a public employer (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section 9; . . . [or] (c) to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization . . . ."[8]

To analyze whether an employer can lawfully apply an employment rule to discipline an employee for engaging in what would otherwise be a protected activity under § 9 of PERA, we apply a three-part test. Under the first prong of the test, we look at whether the employer's action adversely affected the employee's protected right to engage in lawful concerted activities

---

[4] Const 1963, art 6, § 28.

[5] MCL 24.306(1)(f).

[6] *Michigan Ed Ass'n v Christian Bros Institute of Michigan*, 267 Mich App 660, 663; 706 NW2d 423 (2005).

[7] MCL 423.209.

[8] MCL 423.210(1)(a) and (c).

under PERA.[9] Under the second prong, we look at whether the employer has met its burden to demonstrate a legitimate and substantial business justification for instituting and applying the rule.[10] Finally, under the third prong, we balance the diminution of the employee's rights because of application of the rule against the employer's interests that are protected by the rule.[11] In addressing this final prong, we must remain cognizant that " '[it] is the primary responsibility of the Board and not of the courts "to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy." ' "[12]

### C. PROTECTED ACTIVITY

In applying the first prong of the test, MERC concluded that "Siegrist was engaged in lawful concerted activity within the meaning of Section 9 of PERA when she sought [the union attorney's] opinion as to [the sheriff's] right to require, without bargaining, that bargaining unit members wear pagers while off duty." The county and the sheriff argue that MERC erred in this conclusion because Detective Siegrist's act of giving the memorandum to the union's lawyer is not a protected activity under PERA.

---

[9] See also *Jeannette Corp v Nat'l Labor Relations Bd*, 532 F2d 916, 918 (CA 3, 1976). Because of the similarity between PERA and the National Labor Relations Act (NLRA), 29 USC 151 *et seq.*, this Court may appropriately look to federal precedent for guidance. *Michigan Employment Relations Comm v Reeths-Puffer School Dist*, 391 Mich 253, 260 n 10; 215 NW2d 672 (1974).

[10] See *Jeannette Corp, supra* at 918.

[11] See *id.*

[12] *Id.*, quoting *Nat'l Labor Relations Bd v Fleetwood Trailer Co, Inc*, 389 US 375, 378; 88 S Ct 543; 19 L Ed 2d 614 (1967), quoting *Nat'l Labor Relations Bd v Great Dane Trailers*, 388 US 26, 33-34; 87 S Ct 1792; 18 L Ed 2d 1027 (1967).

"As a general proposition PERA does not proscribe breach of a collective bargaining agreement or 'unfairness'; an employee may be terminated for a 'good reason, bad reason, or no reason at all.' But an employee may not be discharged for exercising rights guaranteed by § 9 of the act."[13] As mentioned, § 9 permits public employees "to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection . . . ." According to the United States Court of Appeals for the Third Circuit, to qualify as a protected activity, "it must appear at the very least that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees."[14] Further, the Michigan Supreme Court has explained that "[a]n employee may, in connection with the prosecution of a good faith

---

[13] *Reeths-Puffer, supra* at 258-259, quoting *Nat'l Labor Relations Bd v Century Broadcasting Corp,* 419 F2d 771, 778 (CA 8, 1969). We recognize that this case involves employee discipline rather than discharge, but the same principles apply equally here.

[14] *Mushroom Transportation Co, Inc v Nat'l Labor Relations Bd,* 330 F2d 683, 685 (CA 3, 1964). We note that the Michigan Supreme Court has clarified that "the filing of a *grievance* by even a single employee constitutes protected concerted activity." *Reeths-Puffer, supra* at 261 (emphasis in the original).

In holding that an employee may not be discharged for the filing of a grievance, the NLRB and the Courts of Appeals have rejected arguments that the filing of an individual grievance is not "concerted" activity for the purpose of "collective" negotiation or bargaining or other "mutual" aid and protection. They reasoned that a person who in good faith asserts an individual grievance based on a provision of a collective bargaining agreement should be protected because "the collective bargaining agreement is the result of concerted activities by the employees for their mutual aid and protection." [*Id.,* quoting *Nat'l Labor Relations Bd v Selwyn Shoe Mfg Corp,* 428 F2d 217, 221 (CA 8, 1970).]

grievance, employ reasonable, nonabusive, methods of obtaining information necessary to prosecute the grievance."[15]

The union argues that it is well established that an employer under PERA must make available to the union information that is necessary to negotiate or administer the terms of the parties' labor agreement. Thus, the union argues, the sheriff's application of Rule 106 to the facts of this case constitutes an unfair labor practice because the rule unreasonably restricts the union's ability to represent its members and effectively enforce the terms of the labor agreement. We disagree. In sum, we hold that the sheriff's action did not adversely affect Detective Siegrist's protected right to engage in lawful concerted activities under PERA.

In her hearing testimony, Detective Siegrist admitted that she received a copy of the memorandum in her capacity as a sheriff's department detective, but she asserted that she released the memorandum to the union's attorney in her capacity as a union representative. The Michigan Supreme Court has recognized that subjects such as hourly rates of pay, overtime pay, layoffs, discharges, workloads, vacation and holiday pay, sick leave, pensions, no-strike clauses, profit-sharing plans, grievance procedures and arbitration, *work rules*, seniority and promotion, compulsory retirement age, and management-rights clauses, etc., are examples of mandatory subjects of bargaining.[16] Therefore, there can be no question that Detective Siegrist's conduct of obtaining information, i.e., seeking advice from the

---

[15] *Reeths-Puffer, supra* at 264.

[16] *Central Mich Univ Faculty Ass'n v Central Mich Univ*, 404 Mich 268, 278; 273 NW2d 21 (1978); *Pontiac Police Officers Ass'n v City of Pontiac*, 397 Mich 674, 680-681; 246 NW2d 831 (1976).

union's attorney, appears to have been done with the object of preparing for group action in the interest of the employees.[17]

However, Detective Siegrist admits that she was aware of Rule 106 at the time she faxed the memorandum to the union's attorney. Indeed, the record reflects that Detective Siegrist has requested and received internal sheriff's department documents on numerous occasions, and the sheriff has never denied even one of Detective Siegrist's requests for internal documents. Further, there is no question that Detective Siegrist did not request or receive authorization to release the memorandum at issue. And the county and the sheriff have never asserted that if Detective Siegrist had made a proper request, such request would have been denied. Thus, there can be no reasonable argument that the sheriff acted contrary to its obligation to make information available.

Moreover, as the county and the sheriff point out, in the event that Detective Siegrist made a proper request under the work rules and such request was denied, PERA and the Michigan Freedom of Information Act (FOIA)[18] provide appropriate avenues for resolution of disputes regarding disclosure of a public sector employer's documents. A public employer's failure to comply with a union's request for the release of nonprotected information constitutes an unfair labor practice under PERA, as interpreted and enforced by MERC.[19] Further, FOIA requires the full disclosure of public records,

---

[17] *Mushroom Transportation, supra* at 685; *Reeths-Puffer, supra* at 264.

[18] MCL 15.231 *et seq.*

[19] *Kent Co Deputy Sheriffs Ass'n v Kent Co Sheriff*, 463 Mich 353, 358; 616 NW2d 677 (2000), citing MCL 423.210(1)(e).

subject only to narrowly construed exemptions.[20] Thus, we cannot conclude that the sheriff's application of Rule 106 constitutes an unfair labor practice because application of the rule does not unreasonably restrict the union's ability to represent its members and effectively enforce the terms of the labor agreement. That is, while Rule 106 may make union activity slightly less convenient, the rule does not inhibit protected activity.[21] There is no evidence that the employees' organizing efforts would have been stymied by having to follow the proper procedures for gaining authorization to release the memorandum to the union.[22]

The union also contends that, simply because Detective Siegrist was acting as a union representative, her activities fell under the protection of PERA. According to this Court, however, " '[m]isconduct in the course of concerted activity . . . is not beyond an employer's right to discipline.' "[23] This Court explained: " ' "When a union steward is disciplined for violating job rules and not because of his position as a union official, the steward cannot look to his union status for protection." ' "[24] Further, in *Texas Instruments, supra,* the United States Court of Appeals for the First Circuit

---

[20] *Id.* at 360; see MCL 15.243. We note that "[t]he fact that another body of law potentially gives an additional basis for access to such records [e.g., PERA] does not limit the applicability of the FOIA or the jurisdiction of the circuit court to consider relief under the FOIA." *Kent Co Deputy Sheriffs Ass'n, supra* at 362.

[21] See *Jeannette Corp, supra* at 918.

[22] See *Texas Instruments Inc v Nat'l Labor Relations Bd,* 637 F2d 822, 831-832 (CA 1, 1981).

[23] *AFSCME, Michigan Council, Local 574-A v City of Troy,* 185 Mich App 739, 744; 462 NW2d 847 (1990), quoting the decision of the hearing officer.

[24] *Id.* at 745, quoting the decision of the hearing officer quoting *Manville Forest Products Corp,* 269 NLRB 72; 115 LRRM 1266, 1267 (1984).

stated that employees who act under § 7 of the NLRA
are not always shielded from discipline when they
violate an employer's internal rules.[25] "For example,
concerted activity that violates state or federal law, that
irresponsibly exposes an employer's property to pos-
sible damage or that constitutes insubordination or
disloyalty may be found to fall outside the scope of the
NLRA even if undertaken in the interest of self-
organization or collective bargaining."[26] The First Cir-
cuit stated that " 'employees are entitled to use for
self-organizational purposes information and knowl-
edge which comes to their attention in the normal
course of work activity and association but are not
entitled to their Employer's private or confidential
records.' "[27]

We acknowledge that this case differs from *Texas
Instruments* in that the memorandum was sent to all
the detectives, including Detective Siegrist, in the nor-
mal course of their work activity. However, this case is
not about an employee's right to speak freely with or
obtain advice from a union. It is important to keep in
mind that Detective Siegrist was not disciplined for
disclosing information or seeking advice from her union
attorney; that is, she was not disciplined for simply
using information and knowledge that came to her
attention in the normal course of work activity. She was
disciplined for violating the employment rules by re-
leasing an internal *document* to a person outside the
sheriff's department without prior approval.

Further, this case differs from *Texas Instruments*
because the memorandum in this case was not labeled

---

[25] *Texas Instruments, supra* at 830.

[26] *Id.*

[27] *Id.*, quoting *Ridgely Mfg Co v Durban,* 207 NLRB 193, 196-197
(1973).

as confidential nor would the information contained in the memorandum have led Detective Siegrist to believe that the information was necessarily of a sensitive nature. However, we hold that *any* internal documents produced by the sheriff's department, and circulated internally only, are deemed confidential by simple virtue of the sheriff's work rule prohibiting release of *any* internal documents without prior authorization. Because Detective Siegrist was disciplined for violating job rules, and not because of her position as a union official, she cannot rely on her union status for protection.

The union also argues that Rule 106 is inapplicable to the circumstances of this case because Detective Siegrist did not disseminate the memorandum to "the public." That is, according to the union, its attorney is not a member of "the public" for purposes of applying Rule 106 in light of his relationship to the union and to the employer by virtue of the union's collective bargaining agreement. However, an employer's disclosure obligation is mandatory *unless* the information requested is confidential " 'or readily accessible to the public and thus to the union . . . .' "[28] The union and its counsel are members of "the public" to the extent that they are not employees of the sheriff's department.

Accordingly, we hold that the sheriff was entitled to discipline Detective Siegrist for failing to obtain prior approval before releasing internal documents to persons outside the sheriff's office, even if the alleged rationale for the release was to engage in a union activity. Detective Siegrist's dissemination of an internal document without permission was a punishable

---

[28] *City of Detroit Fire Dep't and Detroit Firefighters Ass'n,* Docket No. C87 I-231, 2 MPER (LRP) P20,012; 1988 MPER (LRP) LEXIS 137 (1988), quoting *Michigan State Univ,* 1986 MERC Lab Op 407, 409 (1986).

offense regardless of whether Detective Siegrist was involved in a union activity at the time.

### D. LEGITIMATE AND SUBSTANTIAL BUSINESS JUSTIFICATION

Even assuming that the sheriff's action adversely affected Detective Siegrist's protected right to engage in lawful concerted activities under PERA, we conclude that the county and the sheriff demonstrated a legitimate and substantial business justification for instituting the rule and applying it in these circumstances.

Like *Texas Instruments*, this case involves an employer's substantial security interest in making sure that employees do not disseminate confidential information because of the sensitive nature of their work. The sheriff's department is a paramilitary organization. Police departments, like defense contractors, have a substantial interest in keeping certain sensitive information confidential, and they are justified in having rules that protect the confidentiality of documents.

The union argues that the content of the memorandum is not sensitive or confidential, noting that the sheriff did not label it as a confidential document. The union stresses that the memorandum clearly and directly addressed a simple and routine working condition. Further, the union points out that Undersheriff Myers admitted in his hearing testimony that the content of the memorandum did not contain confidential or restricted information that would compromise the internal operations of the sheriff's department.

We acknowledge that the release of a memorandum pertaining to wearing a pager off duty does not conceivably prejudice the sheriff's ability to protect the public. However, the union's arguments miss the point. The memorandum's content is irrelevant. What is relevant is the sheriff's interest in ensuring uniformity in dis-

closure of *potentially* sensitive internal documentation. And it is the employer, not the employee, who is in the position to assess the propriety of releasing internal documentation.

MERC and the union appear to believe that a substantial and legitimate business justification will exist only when it is established, after the fact, that an employee's disclosure of internal documents has caused harm. However, the fact that the particular document released in this case may arguably be devoid of sensitive or confidential information does not alter the fact that Detective Siegrist violated department rules in releasing the document to an outside party without any opportunity for the sheriff's oversight of its dissemination. A law enforcement agency must be able to control the distribution of its internal documents to maintain its effective operation. As the county and the sheriff point out, allowing members of a law enforcement organization to release internal documents without authorization in the hopes that they can later justify their actions by invoking their rights to engage in union activity would impermissibly threaten public safety, officer safety, and jail security. Once the information is released, the bell has been rung and the damage suffered may be grave. Given these risks, we cannot expect the sheriff to assess its employee's conduct in hindsight. Employees cannot be expected to discern which types of documents are acceptable for release and which are not—that is the sheriff's job to execute with the benefit of foresight on how the release of such information will bear on the sensitive interworkings of the law enforcement agency.

Again addressing the union's argument that it is not a member of "the public," we find that the sheriff's

interest in preserving the security of its internal communications prohibits an employee from releasing internal documents even to a union's attorney where the documents are protected under the rule of confidentiality. The union is under no legal compulsion to keep sheriff's department information out of the public's hands, and the document could later become public through the litigation of a labor dispute and could compromise the sheriff's sensitive procedures or other information appropriately kept confidential.

We last note that we are fully cognizant of the obvious shortcoming of Rule 106: that it does not preclude an employee from *verbally* communicating, even verbatim, the contents of any internal document to members of the public. However, we reiterate that it is not our place, in this case, to question the validity or logic of Rule 106; we are merely approving application of the rule, which we must presume valid, under the present set of circumstances.

The sheriff has a paramount interest in ensuring that its internal documents are not released without authorization. Thus, even assuming that Detective Siegrist's release of the memorandum was a protected activity under PERA, the sheriff had a legitimate business interest justification for restricting unauthorized dissemination of its internal documents. Thus, we conclude that the county and the sheriff's interest in keeping all internal documents out of the public forum absent department authorization for release outweighs Detective Siegrist's right to engage in protected activity under PERA.

### E. CONSTITUTIONAL ISSUES

The union claims that to force Detective Siegrist to file under FOIA for the release of the memorandum

would deprive her of the fundamental right to due process and would impinge on her First Amendment right to freedom of speech. However, the union cites no legal authority and provides no reasoning to support either of these claims. Thus, the union has effectively abandoned its due process argument by failing to meaningfully argue its merits.[29]

### III. CONCLUSION

We recognize that " '[it] is the primary responsibility of the Board and not of the courts "to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy." ' "[30] However, in reviewing MERC's decision de novo, we conclude that MERC erred in its legal conclusions that the county and the sheriff adversely affected Detective Siegrist's right to engage in lawful concerted activity and that the county and the sheriff failed to establish a legitimate and substantial business justification for applying the rule to Detective Siegrist's conduct. We conclude that Detective Siegrist's right to engage in lawful concerted activity was not adversely affected when she knowingly violated a work rule that the sheriff created and enforced with the legitimate and substantial business justification of protecting the sensitive interworkings of the law enforcement agency.

Reversed.

BANDSTRA, J., concurred.

---

[29] See *Badiee v Brighton Area Schools*, 265 Mich App 343, 359; 695 NW2d 521 (2005) ("A party waives an issue when it gives the issue cursory treatment on appeal.").

[30] *Jeannette Corp, supra* at 918, quoting *Fleetwood Trailer, supra* at 378, quoting *Great Dane Trailers, supra* at 33-34.

SCHUETTE, J. (*dissenting*). I respectfully dissent from the majority opinion of my distinguished colleagues, Chief Judge WHITBECK and Judge BANDSTRA.

We may not disturb the legal conclusions of the Michigan Employment Relations Commission (MERC) "unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Grandville Muni Executive Ass'n v Grandville*, 453 Mich 428, 436; 553 NW2d 917 (1996), citing MCL 24.306(1)(a) and (f). Further, this Court "should give due deference to the agency's expertise and not displace an agency's choice between two reasonably differing views." *West Ottawa Ed Ass'n v West Ottawa Pub Schools Bd of Ed*, 126 Mich App 306, 313; 337 NW2d 533 (1983).

The majority holds that Detective Siegrist was not adversely affected by being disciplined by the sheriff. I disagree. Our Supreme Court has held that "an employee may not be [disciplined] for attempting in good faith to enforce a right claimed under a collective bargaining agreement." *Michigan Employment Relations Comm v Reeths-Puffer School Dist*, 391 Mich 253, 265; 215 NW2d 672 (1974). Disciplining Detective Siegrist for giving the memorandum to the union's attorney most certainly had an adverse effect on her ability to engage in concerted activity under the public employment relations act (PERA), MCL 423.201 *et seq*. Requiring her to file under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*., would have alerted the sheriff to her efforts to communicate with the union's attorney and hindered her ability to seek legal advice in confidence without having to first alert a potentially adverse party.

The facts of this case present an issue of first impression for this Court regarding the application of

PERA. Our Supreme Court has stated that when "construing the PERA, this Court frequently looks to the interpretation of analogous provisions of the [National Labor Relations Act] by the federal courts." *Grandville, supra* at 436. The majority opinion relies on *Texas Instruments Inc v Nat'l Labor Relations Bd*, 637 F2d 822 (CA 1, 1981), in its determination to reverse MERC. While *Texas Instruments* has some legal utility, it is factually quite different from this case.

In *Texas Instruments,* the employment of six employees belonging to a group called the "Union Organizing Committee" was terminated for distributing union leaflets to fellow employees at a Texas Instruments plant in an effort to organize a union. These leaflets had been anonymously mailed to the group's post office box and contained information from a highly confidential wage survey. Texas Instruments, as a major defense contractor dealing with sophisticated electronic products, had a well-developed internal security system to protect sensitive and confidential information. *Id.* at 825. The wage surveys in question were classified as "strictly private," and company policy was to terminate anyone who deliberately disseminated such information to unauthorized persons. *Id.* at 825-826. The discharged employees filed a grievance under § 7 of the National Labor Relations Act (NLRA), 29 USC 157, which is the federal counterpart to § 9 of PERA, MCL 423.209.

In its analysis, the United States Court of Appeals for the First Circuit adopted and applied the three-part test set forth in *Jeannette Corp v Nat'l Labor Relations Bd*, 532 F2d 916 (CA 3, 1976). "The test laid out in Jeannette is for the most part based upon an approach developed by the [United States] Supreme Court in the Fleetwood Trailer and the Great Dane Trailers cases . . . ." *Texas Instruments, supra* at 827; see also

*Nat'l Labor Relations Bd v Fleetwood Trailer Co*, 389
US 375, 378; 88 S Ct 543; 19 L Ed 2d 614 (1967), and
*Nat'l Labor Relations Bd v Great Dane Trailers, Inc*,
388 US 26, 33-34; 87 S Ct 1792; 18 L Ed 2d 1027 (1967).
MERC has adopted the three-part test from *Jeannette*
and relied on it in deciding the present case. This Court
must defer to an enduring statutory construction by
MERC in cases interpreting sections of PERA not
previously dealt with by this Court. *Grandville, supra*
at 437, citing *Southfield Police Officers Ass'n v South-
field*, 433 Mich 168; 445 NW2d 98 (1989).

In *Texas Instruments, supra* at 828, although the
discharged employees were engaged in protected activ-
ity, the First Circuit, quoting the National Labor Rela-
tions Board's decision, stated that " 'because of the
highly technical and defense-related material it
handled, [Texas Instruments] has in general shown
that it has serious security interests which it justifiably
is seeking to protect.' " The general validity of the rule
was not the issue; rather, it was the appropriateness of
its application to the conduct of the employees, just as
in the present case. *Id*. The First Circuit specifically
stated that " 'employees are entitled to use for self-
organizational purposes information and knowledge
which comes to their attention in the normal course of
work activity and association but are not entitled to
their Employer's private or confidential records.' " *Id*.
at 830, quoting *Ridgely Mfg Co v Durban*, 207 NLRB
193, 196-197 (1973).

This case is similar to *Texas Instruments* in that
there is a substantial security interest in making sure
that employees do not disseminate confidential infor-
mation because of the sensitive nature of the sheriff's
work. However, where the two cases differ materially is
how the documents were obtained, the nature of the

documents, and the scope and purpose of their dissemination. In this case, the memorandum in question was circulated to all the detectives and received by them in the normal course of their work. On the other hand, the documents in *Texas Instruments* were obtained anonymously and not through voluntary dissemination by the employer, as in the case at bar. Another key distinction from *Texas Instruments* is the fact that the memorandum in this case was not labeled as confidential nor would the information contained in the memorandum have led Detective Siegrist to reasonably believe that the information was confidential. Also, Detective Siegrist did not widely distribute the memorandum to other employees, as was the case in *Texas Instruments*, and her activity did not constitute an act of disloyalty or insubordination because she was merely performing her role as union president in good faith and not seeking to undermine her employer's operations.

My distinguished colleagues in the majority hold that even if disciplining Detective Siegrist adversely affected her right to engage in lawful concerted activities under PERA, the sheriff had a legitimate and substantial business justification for instituting and applying the rule. I disagree. The majority relies on *Texas Instruments* for establishing a substantial interest for the sheriff in keeping certain information confidential. I have a different view of *Texas Instruments*. The First Circuit stated that the burden of showing a substantial business justification " 'falls on the employer to demonstrate "legitimate and substantial business justifications" for his conduct,' " and not just for the rule itself. *Texas Instruments supra* at 827 (citations omitted). Although the sheriff is entitled to institute such a rule, he was required to show a legitimate and substantial business justification for applying it to Detective Siegrist when he restricted her right to engage in protected

concerted activity under PERA. The majority does acknowledge "that the release of a memorandum pertaining to wearing a pager off duty does not conceivably prejudice the sheriff's ability to protect the public." *Ante* at 149. Therefore, the sheriff did not carry his burden of showing a substantial business justification for applying the rule to Detective Siegrist in this situation.

The majority also distinguishes this case from *Texas Instruments* on the basis of the fact that the memorandum was not labeled as confidential and holds "that any internal documents produced by the sheriff's department, and circulated internally only, are deemed confidential by simple virtue of the sheriff's work rule prohibiting release of any internal documents without prior authorization." *Ante* at 148 (emphasis omitted). This holding sweeps too broadly in the sense that the sheriff can effectively eliminate the rights of his employees granted to them by the Legislature under PERA by promulgating and rigidly applying such an expansive internal work rule. The sheriff certainly has an interest in keeping documents confidential, but if the Legislature had intended that organizations such as the sheriff's department could override statutorily granted rights through internal rules, then it would have expressly stated so.

I would affirm the MERC decision.